MARY D. SMITH *against* JAMES E. COOLEY.

Where arbitrators had rendered an award fixing the value of a building, and it appeared that one of the arbitrators had, before his appointment and in view of it, at the instance of the party afterwards proposing him, examined the building and formed an opinion as to its value: *Held*, that this was sufficient evidence of partiality in the arbitrator to warrant a court of equity in setting aside the award.

Where arbitrators awarded $15,000 as the value of a building, which it appeared from the evidence was not worth more than $6,000: *Held*, that this fact alone showed that the award was influenced by partiality, prejudice, or mistake of facts, and was sufficient to justify the court in setting it aside.

Where a lease provided that in case the lessee should take down and remove the buildings then on the land, or any part thereof, and erect upon said land in place thereof a substantial building, that at the expiration of his lease he should be paid by his lessor the value of such building so erected by him: *Held*, that the lessee could not claim payment for improvements made to the building already on the land, although the nature and style of the building was wholly changed; and

The lease having also provided that the lessee should retain possession of the premises until the amount due him for the building erected by him should be paid or tendered to him: *Held*, that he could not be held liable for the value of the use and occupation of the premises from the time of the expiration of his lease, up to the time of the final decree in a suit brought to determine what amount ought to be paid to him, it being decided in that suit that he was entitled to the payment of a certain amount.

APPEAL from a judgment of this court, entered on the decision of a judge at special term.

The action was brought to set aside an award made by arbitrators, and to determine the rights of the parties under a certain lease.

The facts of the case were as follows:

On the 4th of February, 1851, the plaintiff's ancestor leased to defendant's assignor the lot of land (now) 8 Park place, in the city of New York, 25 × 75 feet, for twenty-one years, from May 1, 1851. The lease provided that the lessee might take down and remove from said lot "the buildings now standing thereon, or such part thereof as he shall elect, and erect upon said land, in place thereof, a good and substantial building." * * "The materials of the old building in such case to belong to the party of the second part." There was also a

covenant for renewal by the lessor, at five per cent. upon the value of the lot, "considering the same as an unincumbered vacant lot," said value to be fixed by arbitration ; or in case a renewal is not granted, to pay the lessee " the value of the building so to be erected by him," said value to be fixed by arbitration ; "and at the end of the term"  *  *  "the said building so to be erected by the party of the second part as aforesaid, shall be valued and paid for in manner and form as aforesaid ; and the party of the second part"  *  *  "shall not be compelled to surrender the premises until such payment shall be made or tendered."

When the lease was made, there was upon the land a three-story brick dwelling-house, with a basement and an attic story, with a peaked or gable roof and dormer windows, which building was twenty-five feet in width in front and rear, and fifty feet in depth.   There was also another brick building in the rear, attached to the main front building and used therewith, which was known as the tea-room, two stories in height, and about twelve feet wide by twenty or twenty-five feet deep.

The main or front building was not torn down or removed from the lot, nor any building erected in place thereof; but soon after the execution of the lease the tenant made the following alterations thereto : The front of the first story and basement was taken out, and instead thereof iron columns and store doors were inserted ; the stairs and partitions in the several stories were torn down ; the floors of the first and basement stories were lowered, so as to bring the first story floor about a foot above the front sidewalk ; the first story floor was relaid, and new stairs made to the different stories ; the rear wall of each of the stories was removed ; also the peaked and gable roof was removed or raised, so as to make a flat roof, and by adding to or raising the front and side walls, two stories were constructed instead of the attic story, so that the building became a five-story building, instead of one of three stories and an attic ; the tea-room was torn down and removed, and in place thereof there was constructed, on the rear of the lot, a five-story building, twenty-five feet in width and twenty-five feet in depth, attached to the old front building previously de-

scribed, without wall or partition between, but the floors of each story united on the same level, and were made continuous throughout ; and such old altered building and the new structure last described constituted the building on the lot when this action was brought.

The first term of the lease expired May 1, 1872. On the 30th September, 1871, the plaintiff having declined to renew the lease, the parties entered into a submission to arbitration, in which, among other things, was recited the fact that differences had arisen as to whether the party of the first part was liable under said lease, " for the value of the whole, and if not of the whole, then of what part of the building now standing upon said premises, and also as to the value of the same, and as to the true construction of said lease in that behalf, therefore they submit and refer it to John W. Mersereau and Jesse W. Powers, as arbitrators, to hear, determine, and decide what is the value of such building, as the said party of the first part is liable to pay for to the party of the second part, pursuant to said lease." Abraham Demarest was chosen umpire. The arbitrators disagreed. Mersereau and the umpire decided that plaintiff must pay the value of the whole building, and that said value was $15,000. Plaintiff did not pay the award, and made no tender to defendant; and defendant, whose lease expired on May 1st, 1872, took no steps to rent the building after that date, nor until 1873.

In October, 1871, plaintiff commenced this action to set aside the award, on the ground of misconduct, partiality, and corruption on the part of the arbitrator Mersereau.

The plaintiff, by her complaint, also asked that the value of the said building, which she was bound to pay for, should be ascertained, and that upon the payment of the same, she should be let into possession of the premises.

Upon the trial, the Court at special term (ROBINSON, J.) delivered the following opinion :

" Accepting it as evidence upon which the plaintiff may rely, the testimony of the witness Mersereau, the arbitrator chosen on the part of the defendant, discloses such ground of misconduct

in his selection (aside from any question of mistake or partiality in the award) as vitiates it, and calls for a judgment declaring it null and void.  By this testimony it appears that no concurrent action was taken by the arbitrators, or umpire, prior to October 5th, 1871, when the umpire was chosen, in view of any disagreement between the arbitrators.  The defendant, in anticipation of Mr. Mersereau being selected as arbitrator on his part, procured Mr. Mersereau to accompany him to the building to be valued three or four times during the month of September, and there, in his company, to make measurements and examinations for the purposes of the arbitration.  Of the conversations that there occurred between them, Mr. Mersereau is only able to state the defendant said : ' This is the building I want you to estimate.'  This was said so that in case he should be appointed—in case defendant should name him—he wanted him (Mersereau) to be at the building to see what value he would put upon it.  Being asked if he had formed his opinion before he went there with Mr. Powers, his co-arbitrator, he answered, ' I suppose I had;' and he believes he had previously come to a conclusion, in his own mind, on the subject of the value of the building, at $15,000, though he says he had not communicated it to the defendant.  No notice of any such previous examinations or estimates was given the plaintiff.  Mr. Mersereau says defendant had told him he preferred a renewal of the lease, and he told Mr. Powers that.  This could have been with but one object, to influence a renewal by suggestion of such an award as might compel it.  On the arbitration, this arbitrator devoted no other attention to the material considerations which occupied his associates.  He says : ' having previously had the measurements of the building, and having previously gone over it and thoroughly examined it in all its parts, I did not then make them over again when I went through the building with Mr. Powers, and with him and Mr. Demarest.'

"Had this arbitrator been a person expected to be called as a juror upon the merits of this controversy, and in anticipation of his being called and sworn, had been so approached by one of the parties, and on three or four different occasions accompa-

nied him to make examinations in reference to the matters in dispute, and had come to a conclusion in his own mind in respect to them, it could not be contended that the verdict could be upheld (Gr. and Wat. on New Trials, 48; *Cottle* v. *Cottle*, 6 Greenl. 140; *Perkins* v. *Knight*, 2 N. H. 474; *Knight* v. *Inhab. Freeport*, 13 Mass. 218). And far less could an award of arbitrators where the action of one of them had been influenced by like considerations. An arbitrator embodies the functions of both judge and juror, as well others of a more delicate and arbitrary character, not subject to like control.

" The courts are disposed to regard the action of such a tribunal of the parties' own choice, as possessing such force and sanction that it ought only to be disturbed for very grave reasons, and consequently in the selection of an arbitrator, and in the conduct of the parties pending the submission, the courts look with extreme jealousy upon anything tending to impugn their entire fairness. The arbitrator might relieve himself from any such imputation, if previous to the arbitration he had communicated to the other party what had transpired, and the extent of any impressions made on him upon the subject, and could fairly state that he was as yet open to conviction. Such ingenuousness would have relieved the award from any ground of impeachment for partiality or misconduct.

" In *Jenkins* v. *Liston* (3 Gratt. [Va.] 535), where in the absence of one of the parties, the arbitrator received from the other a paper used as evidence, the award was set aside, and the court say : ' It has always been an object of great concern with the court to keep the administration of justice free, not only from partiality, but from suspicion thereof. It is due to all parties, whether asserting or defending their rights, in courts of record or before domestic tribunals of their own choice, that they should hear and know everything alleged or proved in opposition to the rights claimed. If, however, evidence on behalf of one party may be secretly heard, his adversary is deprived of the right to explain or disprove what is alleged to his prejudice; * * 'The law in its jealousy will not permit an inquiry into the effect of the evidence so received ; it tends to partiality and corruption, and nothing less than a complete vacation of the award will satisfy the law.'

"In *Conrad* v. *Massasoit Ins. Co.* (4 Allen, 20), the same principle is asserted. Two of the three arbitrators selected had, previous to the submission, at the request of the agent of one of the parties, proceeded to and examined the injured property, and appraised the loss thereto from fire, and 'substantially arrived at a conclusion as to the amount of the loss, and about what amount they had agreed upon.' This they communicated to the other arbitrator, and told him he also had better do so, which he did, alone. They met and made up their result. The court set aside the award; and say, 'The facts show that two of the referees were not *impartial men*, but had in effect prejudged, by an *ex parte* examination of the property, the very question which was submitted to them by the parties.'

"In the present case there is no particular reason to impute improper motives. Probably the defendant offered and the arbitrator received the evidence, and in fact acted in making such valuation as was expected of him when selected as an arbitrator, in ignorance of the improprieties of his conduct. The award cannot, and ought not, for these reasons, to be sustained; but,

"*Secondly*, the evidence shows that the actual value of the old and dilapidated building covering the entire premises did not exceed $4,000.

"To construct one entirely new, upon the particular estimates presented, would have cost from $8,870 to $13,710; and the building in its present condition, was shown not to have been as valuable as one entirely new by about sixty per cent.; and upon no consideration of the testimony can the value of the entire building be held to exceed $6,000.

"The exorbitancy of an award of $9,000 beyond that sum, in itself, presents ground for equitable interference; and it may be reasonably inferred from such discrepancy, that it was influenced by partiality, prejudice, or mistake of facts (Sedg. on Dam. 601), and for such reasons a court of equity may vacate the award (*Williams* v. *Craig*, 1 Dall. 318; *Hurst* v. *Hurst*, 1 Wash. Cir. Ct. 56; *Van Cortlandt* v. *Underhill*, 17 Johns. R.

405; *Rand* v. *Redington*, 13 N. H. 72; *Tracy* v. *Herrick*, 25 N. H. 381; 2 Story Eq. Jur. §§ 14, 51; 2 Morse on Arb. 539).

"*Thirdly*, the award being vacated, the parties are remitted to their original *status*, and it becomes necessary to examine as to their rights under the lease, without regard to that decision.

" The provisions of the lease, under which the defendant claims compensation for the entire building on the lot, were to the effect that the lessee was at liberty, at his own expense, ' to tear down and remove from the lot *the buildings* standing thereon, *or such part thereof as he should elect*,' and erect upon such land in place thereof a good and substantial building; in which case the materials of the old building were to belong to him, and in case of non-renewal the lessor was to pay him the value of *the building so to be erected ;* such value to be ascer·tained by one or more persons to be agreed upon ; and, in case they could not agree, then by arbitrators to be appointed, one by each party, and the two so chosen to choose an umpire between them, whose award was to be conclusive as to the value of such building. Without such provision for the payment for improvements or erections upon the land, such erections as the tenant had placed there, and such as remained thereon at the expiration of the lease, belonged to the landlord.

" In the present case, the tenant must rely on the strict obligations imposed by the lease for any right to demand compensation for his erections.

" Within its terms, the tenant did not, during the term, ' *tear down and remove from the lot* ' *the front building*, or any part of it. He merely made the improvements and alterations to it, specified in my findings of fact; and, however much they enhanced the value of that portion of the property, no claim can be made against the landlord therefor (see *Pike* v. *Butler*, 4 N. Y. 360). ·

" As to the tea-room, in the rear, it was *torn down and removed.* It constituted a part of the buildings standing on the lot at the date of the lease; and the erection in place thereof of the building or structure 25 × 25, and five stories high, was, within the contemplation of the covenants, ' a building,' for which the tenant was entitled to be paid its value at the end of

the lease. The proofs do not enable me to make any assessment of the value of this building separately from the front building. A reference must be had for that purpose, on which allowance must be made to the plaintiff for any use and occupancy of the premises by the defendant since the termination of the lease, and the respective rights of the parties in these particulars adjusted. The question of costs is reserved."

Upon this decision an order was entered directing a reference to ascertain the value of the building or addition erected in the rear of the main building, in the place of the tea-room, which had been torn down and removed. The referee was also ordered to ascertain the value of the use and occupation of the premises from May 1st, 1872 (the date of the expiration of the lease), to the date of his report, and to state the account between the plaintiff and the defendant, charging the plaintiff with the value of the rear building, and charging the defendant with the value of the use and occupation of the whole premises from May 1st, 1872. On May 5th, 1873, the referee made his report, by which he found the value of the addition in the rear to be $2,603, and the value of the use and occupation of the whole premises from May 1st, 1872, to May 5th, 1873, to be $3,547 94, and that on stating the account between the plaintiff and the defendant, he found a balance in favor of the plaintiff to amount of $994 49. Judgment was entered confirming the report of the referee, and directing the defendant to pay to the plaintiff $994 49 and the costs of the action, and to deliver possession of the premises.

From this judgment the defendant appealed.

*Livingston K. Miller*, for appellant, argued. The award will not be set aside for an error in judgment in the arbitrators (Caldwell on Arbitration, 373, 374, 384; *Knox* v. *Symmonds*, 1 Vesey, Jr. 369 ; *Morgan* v. *Mather*, 2 Id. 21 ; *Goodman* v. *Sayres*, 2 Jacob & Walker, 249 ; *Van Cortlandt* v. *Underhill*, 17 Johns. R. 408, 411, 415, 420; Story's Eq. vol. 2, §§ 1451, 1454, 1455, referring to *Chase* v. *Westmore*, 13 East, 358). None of the objections assigned are causes of reversal or modification of the award, either at common law or under

the statute (*Emmet* v. *Hoyt*, 17 Wend. 410 ; *Smith* v. *Cutler*, 10 Wend. 589.) " *Misconduct and misbehavior* imply an intent to do wrong " ( *Viele* v. *Troy & Bost. R. R. Co.* 21 Barb. 382 ; see pp. 395–6, and p. 394 ; *Dater* v. *Wellington*, 1 Hill, 319 ; *Butler* v. *The Mayor*, Id. 489 ; *Perkins* v. *Giles*, 53 Barb. 342 ; *Morewood* v. *Jewett*, 2 Robt. 496 ; *Ott* v. *Schroeppel*, 5 N. Y. 482 ; *Turnbull* v. *Martin*, 37 How. Pr. 20 ; *Perkins* v. *Giles*, 50 N. Y. 228 ; *Wood* v. *Auburn &c. R. R. Co.* 8 N. Y. 160).

*Augustus F. Smith*, for respondent.

LARREMORE, J.—The right of a court of equity to set aside an award for corruption, partiality, or palpable mistake of law or fact, is well settled (2 R. S. 544, § 22 ; *Herrick* v. *Blair*, 1 Johns. Ch. 101 ; *Underhill* v. *Van Cortlandt*, 2 Johns Cas. 365 ; *Perkins* v. *Giles*, 50 N. Y. 232 ; *Burnside* v. *Whitney*, 21 N. Y. 148 ; *Perkins* v. *Giles*, 53 Barb. 342). The learned judge who tried this cause has found as a question of fact, that the arbitrators who made the award in question were, and each of them was, guilty of want of care, misjudgment, and partiality in making the same. Mersereau, in anticipation of his selection as an arbitrator, examined the premises in dispute, in company with the defendant, and admits that he had formed an opinion upon the subject without any notice to or conference with his co-arbitrator. From this fact alone evident partiality might be inferred.

The learned judge has also found as a question of fact that the award was excessive and exorbitant, and that the parties who united in it were guilty of misjudgment and partiality on this ground.

These conclusions, based as they are upon evidence, must be regarded as final, in the absence of any gross error of either law or fact.

The award being thus impeached and set aside for sufficient cause, the parties to it are relegated to their original rights under the lease of the premises in question (*Rathbone* v. *Warren*, 10 Johns. 586 ; *Miller* v. *McCan*, 7 Paige, 451 ; *Kershaw* v. *Thompson*, 4 Johns. Ch. 609 ; *Frost* v. *Myrick*, 1 Barb. 362).

The issues raised by the pleadings fully presented all matters of difference which might arise under said lease, and conferred upon the court below jurisdiction to adjudicate thereon.

The parties being thus before the court in the precise attitude of suitors, between whom no proceedings under an arbitration and award existed, the first question to be considered is the construction of that covenant of said lease which provides that the lessee therein named may, at his own cost, *take down and remove from the lot of land* in said lease described, the building now (then) standing thereon, or such part thereof as he should elect, and erect *in place thereof* a good and substantial building, &c. ; the materials of the old building in such a case to belong to said lessee. The terms " take down and remove," " and erect upon said land in place thereof," evidently refer to a complete destruction and removal of said building, or some part thereof, from its foundation. No provision is made for any alterations or improvements in the original structure, or payment therefor, whatever their cost or character (*Pike* v. *Butler*, 4 N. Y. 360). A further covenant in said lease provides that the value of the building so to be erected on said lands shall be ascertained, &c. I think the conclusion of the court below upon this point was correct, and that the defendant was only entitled to the value of the building erected on the rear of said lot. Such value has been found, upon conflicting evidence, to be the sum of $2,603, and must be accepted, for the purposes of this appeal, as correct.

I fail to recognize, however, the right of the plaintiff to reduce said amount by a credit of $3,547 94, and have judgment for the excess.

The sum last named was adjudged to be a reasonable allowance for the use and occupation of said premises for one year. The lease expired May 1, 1872, and from that time until May 5th, 1873, the said amount of rent was claimed and allowed. By the terms of said lease the defendant was not to be compelled to surrender possession of the premises until the payments for which it provided were made or tendered. During the year for which rent was allowed, the defendant, so far as the evidence shows, had a mere naked possession of the premises, for the

Smith v. Cooley.

purpose of security only. He was liable at any moment to be called upon to surrender such possession upon payment or tender. It does not appear that any such tender was made, or that the defendant desired or received any pecuniary benefit from said premises during the year in question. The ruling upon this point, charging the defendant with the said sum of $3,547 94, was in my judgment erroneous, and for this reason a new trial should be ordered.

J. F. DALY, J.—I concur with Judge LARREMORE. In respect of the allowance made to plaintiff of the rent or value of the premises in question from the time of the expiration of the lease, and which seems to have been allowed as a set-off or as a counter-claim against the defendant's recovery for the value of the erections upon the land, I am of opinion that it should not have been made : 1st. Because, as pointed out by Judge LARREMORE, the lease expressly provided that the lessee should not be compelled to surrender the premises until tender of the value of such erections ; and 2d, because it was unauthorized by the pleadings. The complaint alleged no damage to plaintiff, on account of the improper conduct of defendant in the arbitration proceedings and the delay that has ensued ; nor did it allege to be due, nor demand any rent, nor any allowance for use and occupation ; nor did it even allege that defendant remained in occupation of the premises, but simply asked to have the award set aside, the value of the erections ascertained, and that plaintiff upon payment thereof be let into possession. The judgment must be *secundum allegata et probata* ( *Wright* v. *Delafield*, 25 N. Y. 266).

New trial ordered.