In the Matter of the Arbitration between FLOTILL PRODUCTS, INCORPORATED, Appellant, and BUITONI FOODS CORP., Respondent.

First Department, October 26, 1961.

*Roger A. Schultz* of counsel (*Henry E. Schultz* with him on the brief; *Henry Edward Schultz,* attorney), for appellant.

*Milton Shalleck* of counsel (*Frederick M. Garfield* with him on the brief; *Garfield, Clifford & Fagan,* attorneys), for respondent.

STEVENS, J.   This is an appeal from an order entered April 22, 1960, vacating and setting aside an arbitration award, and enjoining the petitioner-appellant from participating in certain arbitration proceedings in California, and directing a new arbitration between the parties.

The petitioner-appellant, Flotill Products, Incorporated (herein called Flotill) is a packer and supplier of fruits and vegetables, including canned tomatoes and tomato products. Respondent, Buitoni Foods Corp. (herein called Buitoni), is a major producer and distributor of certain foods and sauces, and a substantial user of canned tomatoes and tomato paste.

December 4, 1956, the parties entered into a written contract (No. 7600) whereby Buitoni ordered and Flotill agreed to supply 125,000 cases of peeled pear tomatoes, and a second contract (No. 7601) whereby Buitoni ordered and Flotill agreed to supply 10,000 cases of tomato paste of a specified grade.   The orders related to the 1957 crop of tomatoes and shipment of the goods was to be made by June, 1957.   This contract contained an arbitration clause providing that any controversy arising out of the contract should be settled by arbitration in New York, Chicago or San Francisco.   If the parties could not agree upon the place, arbitration should be held in one of the three cities nearest the point where the goods are located.   Arbitration was to be held before and under the

rules of joint arbitration boards appointed or approved by the National-American Wholesale Grocers' Association, the National Food Brokers' Association and the National Canners' Association.

By letter dated January 27, 1958, accompanied by purchase order No. 10289 dated January 24, 1958, Buitoni ordered 110,000 cases of unlabelled fancy tomatoes, and 85,000 cases of grade A tomato paste. The letter stated "[a]ttached is confirmation order for the 1958 season. Same conditions as previous contract to be applied." The orders were confirmed and the letter acknowledged by a letter from Flotill dated February 24, 1958.

April 30, 1958, Buitoni signed another purchase order No. 10746 for products (not involved in this proceeding) which stated "[t]o be manufactured during tomato packing season. Tomatoes and tomato paste used to be drawn against our 1958 contracts."

As to the orders given by Buitoni for the 1958 crop, Buitoni on October 1, 1958, notified Flotill that it would not accept further shipments of the 1958 pack (of tomatoes). November 10, 1958, Flotill telegraphed Buitoni that it therefore terminated the contract and would attempt to dispose of the merchandise in order to mitigate damages. One carload of 1,500 cases of the 1958 crop had been shipped to Buitoni on or about September 18, 1958. This carload was the only shipment of the 1958 crop which Buitoni accepted. Pursuant to stipulation between the parties, dated September 29, 1958, it was agreed that the carload would be released to Buitoni for the convenience of the parties, without prejudice to or waiver of the rights of either party, and without affecting the pending claim of Buitoni respecting the 1957 crop.

Prior to the October, 1958 repudiation, a dispute had arisen between the parties concerning the quality of the tomatoes shipped from the 1957 crop pursuant to the December, 1956 contract. When the dispute was not adjusted Buitoni, on November 14, 1958, served a demand for arbitration seeking to arbitrate the controversy regarding the quality of tomatoes shipped from the 1957 crop, as well as the quality of the tomatoes from the 1958 crop, though only one carload had been accepted by Buitoni pursuant to agreement. Buitoni sought to have the orders of January, 1958, treated as an extension of the contract of December, 1956, i.e., as one part of an indivisible whole. Flotill objected to the attempt to include the 1958 orders, contending they represented a separate contract. There was no disagreement that arbitration as to the 1957

crop should be held in New York, because tomatoes of the 1957 crop were in New Jersey.

Flotill sought to stay arbitration on the 1958 contract, asserting that there were separate contracts and the 1958 products were in California. November 20, 1958, Flotill served written notice of a demand for arbitration in California.

May 5, 1959, Mr. Justice SAYPOL (on a referral to determine the place of arbitration) ruled that the agreement of the parties is clear, and that the question of the place of arbitration was one for the arbitrators to decide. Thereafter, on September 17, 1959, Mr. Justice TILZER refused to stay the New York proceeding, but pointed out such refusal was not to be considered as affecting the proceeding commenced in California, and that "all * * * issues * * * including the location of the merchandise in dispute and the place of arbitration, are within the exclusive jurisdiction of the arbitrators."

Arbitration hearings began on October 29, 1959, primarily on jurisdiction. The arbitrators, by "Findings and Award" dated October 30, 1959, found (1) jurisdiction of the 1957 pack (tomatoes) is under the New York Arbitration Board of the National Canners' Association; and (2) jurisdiction of the 1958 pack is under the California Board. Of course the arbitrators could not bind California to accept jurisdiction, it could only find there was no jurisdiction here.

Thereafter the hearings continued, all argument and proof being confined to the 1957 crop or pack. By "Findings and Award" dated December 17, 1959, and mailed to the parties, the arbitrators found that Buitoni should (1) retain the balance of the tomatoes (of the 1957 crop) in the warehouse, and (2) that Buitoni should receive in addition $22,524.84. The "Findings and Award", though signed, was not acknowledged as required by section 1460 of the Civil Practice Act.

Pursuant to a suggestion and letter from counsel for Flotill the separate "Findings and Award" of October 30, 1959, and December 17, 1959, were consolidated and acknowledged in order to conform with the requirements of section 1460 of the Civil Practice Act.

Thereafter Buitoni, by motion returnable January 25, 1960, moved pursuant to section 1462 and 1463 of the Civil Practice Act to vacate and set aside the "Findings and Award" dated October 30, 1959, December 17, 1959 and January 4, 1960. Buitoni charged, *inter alia,* that the arbitrators had exceeded their powers, imperfectly executed such powers, had been guilty of misconduct in refusing to postpone the hearing, and that they were guilty of misbehavior. The motion was granted, the

award vacated, the California proceeding stayed and a new hearing ordered before new arbitrators. It is from the order entered thereon that this appeal is taken.

The grounds upon which an award may be vacated are set forth in section 1462 of the Civil Practice Act. Fraud and deceit were expressly disavowed by Buitoni as grounds for objection. In light of the nature of the challenge here we are concerned with subdivisions 3 and 4 which provide for the vacating of an award:

" 3. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

" 4. Where the arbitrators, or other persons making the award exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award upon the subject-matter submitted was not made."

The documentary evidence, including but not limited to, the minutes of a meeting held March 18, 1958 (a copy of which was enclosed in a letter from Buitoni to Flotill referring to the 1957 contract), the purchase orders referring to the 1958 contract, the letter or memo of Mr. Buitoni, dated July 3, 1958, confirming that beginning with the crop of 1958, Flotill was to be the exclusive supplier to Buitoni of tomatoes and tomato paste, and the testimony given warranted a finding that the parties regarded the contracts as separate. It is not disputed there were some 26,000 cases of tomatoes from the 1957 crop in New Jersey and jurisdiction of that controversy was properly in New York. Since the arbitrators in effect determined there were separate contracts, proof of the presence of some part of the 1958 product within the jurisdiction was required in order to give them jurisdiction of the 1958 crop. The only competent proof of any of the 1958 contract crop being within the jurisdiction was the agreement regarding the 1,500 cases shipped and received without prejudice and without regard to current contracts. Such a shipment would not serve to confer jurisdiction pursuant to the arbitration clause and could not be considered. The only other merchandise of Flotill was some which Buitoni purchased from other companies, not pursuant to its contract with Flotill, apparently in order to have some Flotill products in New York. This could not serve to confer or expand jurisdiction as to the 1958 contract. Even as to that and excluding the 1,500 cases, there was no competent proof that any of the 1958 crop was in New York at the time demand

for arbitration was made. Jurisdiction under the agreement of arbitration was a question of fact, and so resolved by the arbitrators.

Before an extended discussion of the issues in this case is undertaken, certain principles affecting arbitration may be recalled. Parties are free to select in advance the tribunal before which any disputes arising shall be heard. Where it is agreed that arbitration is the method chosen, questions of law and fact are for the arbitrators (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76; *Matter of Spectrum Fabrics* [*Main St. Fashions*], 285 App. Div. 710, affd. 309 N. Y. 709). The arbitrators' determination as to the law and the facts is conclusive unless there is some violation of the provisions of section 1462 of the Civil Practice Act, or the agreement authorizing arbitration so provides. Errors of judgment as to the law or the facts will not warrant setting aside the award (*Matter of Wilkins*, 169 N. Y. 494, 496; *Matter of S & W Fine Foods* [*Office Employees Int. Union*], 8 A D 2d 130). Arbitrators are not required to follow fixed rules of law, and if they do not exceed their jurisdiction, the award will not be set aside, where no fraud or corruption is shown (*Matter of Campe Corp.* [*Pacific Mills*], 275 App. Div. 634; *Everett v. Brown,* 120 Misc. 349). Certainly it was not an excess of jurisdiction, nor that misbehavior or misconduct of which the statute speaks, to decline jurisdiction of the 1958 crop controversy.

There was neither abuse of discretion, misconduct nor misbehavior by the arbitrators in refusing a request by Buitoni for an adjournment after their " Finding " on October 30, 1959. Buitoni sought the hearing, much testimony had been taken, witnesses or participants had come or been brought from California, and because of dissatisfaction with the " Finding " the proceedings, from the record, were tied up at great length by the conduct, observations, and temporary failure to go forward on the part of Buitoni's counsel. There was not that " sufficient cause shown " required by statute (Civ. Prac. Act, § 1462, subd. 3) or the Rules of Arbitration.

Preliminarily, in view of the legal action which preceded the beginning of the hearings, it was necessary that the arbitrators determine jurisdiction. Both parties practically insisted upon such a determination and, initially, presented their proof solely on that issue. Neither should now be heard to complain because that was done. In the absence of agreement between the parties, jurisdiction of the arbitrators depended solely upon a determination as to the location of the product. Implicit in and essential to their rejection of jurisdiction of the 1958 crop,

was a determination that the merchandise was not located within the New York jurisdiction. (Cf. *Arcola Fabrics Corp.* [*Brenda Modes*], 273 App. Div. 891, involving a question of delivery of goods.) Subsequent to such a determination the arbitrators were confined, necessarily, to consideration of the 1957 crop controversy, and their award of December 17, 1959, reflected this limitation and their findings on the merits.

While the time to render an award expired December 21, 1959, the essential findings and determination had been made and signed prior to that time. Unless the consolidated or single document of January 4, 1960, is vulnerable for the reasons stated in section 1462 of the Civil Practice Act, the addition of the acknowledgments — the substance, findings and damage award not having been altered in any respect, was a mere ministerial act, which would not invalidate the award. Compare *Hodgkins* v. *Mead* (119 N. Y. 166, 171) where the court in a case at law observed: " In following rules of practice for the due and orderly administration of the law, care should be taken that justice is not smothered by a too slavish adherence to the mere forms and technicalities of procedure." There was no second award, but merely initial and final determinations, however denominated, which were in nowise contradictory or even in conflict. (Cf. *Matter of Wagner* (*Russeks Fifth Ave.*), 30 Misc 2d 127.) Together they made up the award which the statute requires. No substantial right of the parties was prejudiced thereby, and the intent of the award was effected. (Cf. *Matter of Verly Bldg. Corp.* [*Gertner*], 264 App. Div. 885.) At any rate, prior to the attack upon the award, the necessary acknowledgments had been made. (*Matter of Herman,* 170 Misc. 852; cf. *Matter of Yeshiva Rabbi Solomon Kluger* [*Pievko*], 188 Misc. 179.)

Nor would the fact that Flotill elected not to call any witnesses after Buitoni rested necessarily invalidate the award. The arbitrators had all the evidence before them, which included the exhibits and the testimony of witnesses on direct and cross-examination. They were not bound to accept Buitoni's version.

The charge of misconduct by the arbitrators because of a refusal to hear evidence pertinent and material to the controversy is not sustained or supported by the record. The offer of proof in one instance was to substantiate the testimony of Mr. Buitoni, though counsel for Buitoni stated his position that he felt he had established the over-all agreement. The arbitrators stated flatly that it was their feeling each side should have the time " they feel they need to present their case." On another occasion Buitoni sought a stipulation as to

testimony but did not wish to include in the stipulation that the witnesses not called would testify the same as the two who, at that stage, had been called. There was no obligation on the part of counsel to agree to such a stipulation, nor on the arbitrators to accept it.

The record of the hearing before the arbitrators does not support Buitoni's charges of violation of subdivisions 3 and 4 of section 1462 of the Civil Practice Act. The action taken by the arbitrators and the award were clearly within their competence. The arbitrators had the authority to adjudicate the issues as well as to award damages (*Matter of General Footwear Corp.* v. *Lawrence Leather Co.*, 252 N. Y. 577).

The combining of the findings and the award did violence to no principle of arbitration, or of equity. It made easier the ascertaining of the intent of the arbitrators and the enforcement of the award. The acknowledgments having been added, Flotill was not precluded from moving to confirm had it so desired, in which case, had the court entertained the proceeding, it might have approved the acknowledgments.

Accordingly, the order appealed from should be reversed in its entirety, on the law and the facts, the stay vacated, and the award reinstated, with costs to the appellant.

BOTEIN, P. J., McNALLY, STEUER and NOONAN, JJ., concur.

Order, entered on April 22, 1960, unanimously reversed in its entirety, on the law and on the facts, with $20 costs and disbursements to the appellant, the motion denied, the stay vacated and the award reinstated. Settle order on notice.