15 N.Y.2d 882 (1965)
In the Matter of the Arbitration between Rita Torano, Appellant, and Motor Vehicle Accident Indemnification Corporation, Respondent.
Court of Appeals of the State of New York.
Argued February 3, 1965.
Decided March 11, 1965.
William Palitz and Joshua J. Nasaw for appellant.
Patrick J. Hughes for respondent.
Concur: Judges FULD, VAN VOORHIS, BURKE and SCILEPPI. Chief Judge DESMOND and Judge BERGAN dissent in separate opinions in each of which the other concurs and in both of which Judge DYE concurs.
Order affirmed, without costs, upon the opinion at the Appellate Division.
Chief Judge DESMOND (dissenting).
Dissenting, I agree that this obviously inadequate allowance of damages establishes, within the meaning of section 7511 of the CPLR and of the cases cited by Judge BERGAN, that the award must be vacated because of the "partiality" of the arbitrator.
*884 There is another equally forceful reason for such vacatur. This is not a conventional, consensual arbitration. Ordinarily, when parties have agreed to arbitrate instead of litigate, the award must stand regardless of errors of law or fact (Matter of Wilkins, 169 N.Y. 494, 496). But this particular claimant, as will be explained herein, had an absolute right by statute (Insurance Law, § 167, subd. 2-a) and by the insurance contract itself to such sum up to a $10,000 maximum as she was "legally entitled to recover as damages from the owner or operator" of the "hit and run automobile". A New York statute (Insurance Law, § 167, subd. 2-a) requires that every automobile liability insurance policy issued in this State contain a provision binding MVAIC to pay such damages. Every car owner must purchase such a policy with such a rider. The policy issued in this case contains the required rider which is in the standard form approved by the Superintendent of Insurance and includes an express promise by MVAIC to pay all sums which the insured or his legal representative "shall be legally entitled to recover as damages". The arbitration procedure approved by the Superintendent of Insurance for fixing the amount of such recovery is merely decisional machinery. The obligation is to pay damages determined according to rules of law. In enacting in 1958 the Motor Vehicle Accident Indemnification Corporation Law the Legislature (see Insurance Law, § 600) made all this plain when it furnished us with a "Declaration of purpose" reciting that the compulsory motor vehicle insurance law passed in 1956 had failed to accomplish its full purpose of securing to innocent motor vehicle accident victims recompense for the injury and financial loss inflicted upon them, since the compulsory insurance act made no provisions as to accidents caused by uninsured motor vehicles and hit-run drivers. In the declaration of purpose the Legislature announced "that it is a matter of grave concern that such innocent victims are not recompensed for the injury and financial loss inflicted upon them" and "that the public interest can best be served by closing such gaps in the motor vehicle financial security act through the incorporation and operation of the motor vehicle accident indemnification corporation." To accomplish this purpose the Legislature set up MVAIC and required that every liability policy issued by any insurer agree on behalf of MVAIC to pay the legally collectible damages, *885 and authorized MVAIC with the approval of the Superintendent of Insurance to fix the precise terms of the policy provision. Complying, the Superintendent approved, and MVAIC and all the insurers adopted, a policy rider containing an absolute promise, in the case of injuries or deaths caused by the fault of uninsured or hit-run automobiles, to pay legal damages. The ordinary and general rule that an arbitrator's mistake of law or fact is not reviewable in the courts can have no application to a fixation of any amount which by statute and contract must be according to the legal measure of damages.
Questions somewhat like this one have arisen before and it has been held in both State (Matter of Kingswood Management Corp. [Salzman], 272 App. Div. 328) and Federal (Wilko v. Swan, 346 U. S. 427, 434) cases that as to rights created by a statute any arbitration award would be illegal which failed fully to enforce the right.
That an award like this one is to be tested by rules of law and not by the whims of a particular arbitrator follows from the holdings of this court nearly a century ago in the renowned case of Fudickar v. Guardian Mut. Life Ins. Co. (62 N.Y. 392). The opinion in Fudickar first stated the general rule that, since in the ordinary arbitration all questions of fact and law are referred generally to the arbitrator, the court possesses no general supervisory power over the awards and cannot set them aside because they are erroneous on the facts or the law. However, the opinion made it equally clear that, if it appears from the award, either by express statement or "by clear and necessary inference", that the arbitrator intended to decide according to the law but failed to do so, then the courts have full power to set aside the award for errors of law (62 N. Y., p. 401). If the courts have such a power when it appears that the arbitrator intended to decide according to law, there can be no doubt that such review power in the courts must exist where the arbitrator is required both by statute and by the contract of insurance to measure his award by applicable rules of law.
No court would hesitate to set aside a jury verdict awarding $500 as wrongful death damages on facts like these. Unless the courts assert and exercise a similar power as to absurdly inadequate awards in MVAIC cases the clearly expressed legislative purpose and insurance policy agreement will be subverted. *886 The position is well stated in Encyclopedia of New York Law (Vol. 2, Automobiles, 1965 Pocket Supp., p. 157, § 1352) as follows: "The law was designed to afford a person injured in an accident the same protection as he would have had if he had been injured in an accident caused by an identifiable automobile covered by a standard automobile liability insurance policy in effect at the time of, and applicable to, the accident". "The same protection" must include court review of the amount of damage.
I would reverse and reinstate the Special Term order, with costs in this court and in the Appellate Division.
BERGAN, J. (dissenting).
There surely must be a point at which an award by an arbitrator is so shockingly disproportionate as to require judicial intervention. The statutory ground for such intervention is "partiality of an arbitrator appointed as a neutral" (CPLR 7511, [b], 1, [ii]). The court held in Matter of Phillips (Amer. Cas. Co.) (9 N Y 2d 873) the point for intervention had not been reached in that case where appellant argued that the disproportion of the award to the damage demonstrated partiality. (See dissenting memorandum of FROESSEL and FOSTER, JJ., p. 875.)
But the present case goes much beyond Phillips and the award is so grossly wrong and inappropriate to the questions of liability and damage before the arbitrator that inescapably it makes out a case of partiality in the sense in which that term is used in the statute and applied to an arbitrator "appointed as a neutral".
If partiality is ever susceptible of demonstration from an examination of the award it is manifested here; and the judicial interference which ought to result would not be grounded on a mere difference in opinion as to what the amount of damages should be, which, as many cases show, is an impermissible basis for interference.
The submission by the parties to arbitration, as this record shows, was for all sums which the claimant-appellant "shall be legally entitled to recover as damages" from an uninsured or absent motorist. This submission as a basis of recovery is relevant in the judicial approach to the award only in testing partiality, but it is relevant for that purpose and the purpose itself lies within the frame of judicial power.
*887 With this relevancy in mind it is clear that the decedent's widow is entitled to damage if her husband was free from negligence and the uninsured driver was negligent in a manner which in some way contributed to the death. Since decedent was 23 years old, had a wife and two young children, and earned $100 a week, the damage resulting from wrongfully contributing to his death would be at least $60,000 and hence it would not be possible for an impartial arbitrator to award less than $10,000, the maximum amount which the respondent had agreed to submit to arbitration.
The award of $500 had no sensible relationship to the question before the arbitrator and, indeed, is so irrational as to establish the partiality of the arbitrator. It cannot be justified on the theory that the arbitrator found the uninsured driver not negligently responsible for the death, and that nevertheless he decided to make the widow a gift or a grant of the indemnification corporation's money.
The submission to arbitration is based in exact terms on what the widow is "legally entitled" to have, and if there is no legal right it would be wrong to make an award in her favor. It is said that she could not complain of this kind of decision because she would get $500 she was not entitled to have. But this grossly inadequate award must be presumed to be grounded on a finding of liability rather than an absence of liability, and if there is liability the award is manifestly the result of the kind of partiality which the statute prohibits in an arbitrator "appointed as a neutral" and of that she certainly can complain.
Nor would it be possible for the arbitrator to apportion damages for the death between the uninsured driver, if that driver played an effective negligent part, and other causes of death. The damages are not thus apportionable and reducible under a submission of what the widow is "legally entitled" to have. If the respondent corporation is responsible at all it must pay the full damage. It cannot be fractionally responsible for what the widow is "legally entitled" to have.
Nor is it possible to say that in the fleeting instant between one cause and another, both contributing to decedent's death, the widow's damage could somehow be weighed in at $500 chargeable to one of the two causes. And it would not be possible to hold that the value of his remaining life before *888 he was finished off in another instant by the second cause was somehow to be appraised at $500.
It is to incongruities of this sort that the critics of arbitration point when they argue that in the long run it is better to leave disposition of litigation with professional Judges and not with occasional amateurs, even though in some fields, e.g., market values and production techniques, judicial amateurs would have more "expertise" than professional Judges.
That a grossly disproportionate award will be taken as proof of partiality has long been the rule in New York and the language of the present statute is based on an acceptance of that rule. In Van Cortlandt v. Underhill (17 Johns. 405) the Court of Errors reversed a decision of the Chancellor which sustained an award on the ground that the gross excessiveness of the award demonstrated either corruption or gross partiality, and a similar result was reached in Smith v. Cooley (5 Daly 401).
In 1923 the Supreme Court of Michigan noted that while inadequacy of an award "will not in itself" justify interference it will be set aside where "the amount is so palpably inadequate as to amount to evidence of fraud or bad faith" (Huested v. Patrons Mut. Fire Ins. Co., 223 Mich. 213, 217). (See, also, discussion in Mork v. Eureka-Security Fire & Mar. Ins. Co., 230 Minn. 382, 391.)
It is not fairly possible to look at this result as the work of an impartial arbitrator. The award should be vacated and the order of Special Term reinstated.
Order affirmed.