INTEGRATED SALES, INC., Respondent, v MAXELL CORPORATION OF AMERICA, Appellant.

First Department, June 21, 1983

APPEARANCES OF COUNSEL

*Lance Gotthoffer* of counsel (*Gene Y. Matsuo* and *Matthew Digby* with him on the brief; *Wender Murase & White,* attorneys), for appellant.

*David Epstein* of counsel (*Michael Lovendusky* and *David N. Ellenhorn* with him on the brief; *Blatchford, Epstein & Brady* and *Stein, Zauderer, Ellenhorn, Friedman & Kaplan,* attorneys), for respondent.

OPINION OF THE COURT

SULLIVAN, J.

For several years petitioner Integrated Sales, Inc. had been the exclusive, and apparently successful, sales representative of respondent Maxell Corporation of America for its consumer audio products in the Ohio, western Pennsylvania and West Virginia region. According to Integrated in

1977 it had surpassed all of Maxell's monthly sales targets, doubled the number of sales in its tri-State territory and sold $629,586 of Maxell-manufactured audiotape, an increase of almost 25% over the previous year. In 1978 it achieved 114% of its annual quota and doubled its sales to $1,757,653. By the end of 1979 it had more than tripled Maxell's accounts and expanded the number of sales locations twelvefold. Utilizing its own employees and funds Integrated recruited and trained a network of dealers, consisting of discount houses, drug store chains and record shops. As a result of its efforts, Integrated estimates that Maxell, over the next 10 years, will earn more than $30,000,000 from sales in the Ohio, West Virginia and western Pennsylvania region. Notwithstanding, on October 15, 1979, Maxell, without stating any reason, terminated the relationship, effective 30 days thereafter.

Almost one year earlier, on December 29, 1978, the parties had executed a sales representative agreement which provided in paragraph 3 that the "relationship" was to "continue until either [party] decide[s] for any reason that we should no longer do business together." Additionally, paragraph 18 gave Maxell the power to terminate the agreement at its sole option on 30 days' written notice, and paragraph 23 absolved either party from damages resulting from termination of the agreement. The agreement also contained a broad arbitration clause providing for arbitration in accordance with the Commercial Rules of the American Arbitration Association. The agreement and performance thereunder were to be governed by the laws of the State of New York. In April, 1981, 17 months after termination, Integrated served a demand for arbitration, claiming that Maxell had not paid certain back commissions and other amounts due, and that it had wrongfully terminated the agreement. The amounts of damages sought was not specified.

At the arbitration hearing Integrated contended that the reason for the termination was its refusal to pay bribes to Maxell's former national sales manager, now deceased, who had himself been discharged by Maxell after Integrated's termination. Through witnesses and documents Integrated described a corrupt scheme in which the former

sales manager and a coterie of Maxell officials and consultants played a central role. Apparently, these individuals pressured sales representatives such as Integrated, as well as Maxell suppliers and employees, to make payments to their wholly owned company for the ostensible purpose of purchasing shares of stock. The stock was worthless. Throughout the arbitration hearings Maxell, alleging an absolute right of termination under the sales representative agreement, maintained that its reason for terminating Integrated was not properly before the arbitrator. Nevertheless, Maxell presented witnesses in an effort to establish a noncorrupt reason for the termination. Integrated offered evidence that it sustained damages of $1,500,000.

After taking testimony from 17 witnesses, divided almost equally between the parties, during five days of hearings, and viewing 80 exhibits, the arbitrator, a New York attorney selected by the American Arbitration Association, found that Maxell had wrongfully terminated the sales representative agreement, and awarded Integrated $500,000 in damages with interest. The arbitrator did not write an opinion explaining the basis of his award since the parties had previously stipulated that none was necessary. Special Term confirmed the award and, rejecting the argument that the arbitrator had exceeded his power (see CPLR 7511, subd [b], par 1, cl [iii]), the only basis for vacatur asserted by Maxell, denied its cross motion to vacate. We agree with Special Term and affirm.

In support of its argument that the arbitrator exceeded his authority Maxell contends that the claims of corrupt motive are irrelevant to the termination of an agreement terminable at will and that, in any event, the express contractual limitation on damages contained in the sales representative agreement bars an award for wrongful termination. Thus, it reasons, in fashioning an award in damages for wrongful termination the arbitrator effectively rewrote the parties' agreement by creating obligations to which they had never agreed.

Courts are statutorily mandated to "confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511." (CPLR 7510.) The

grounds for vacating an arbitration award are limited by CPLR 7511 to fraud or misconduct in procuring the award, arbitrator partiality, the arbitrator's abuse of power, or denial of procedural due process. These grounds are exclusive. (*Matter of Torano [MVAIC]*, 19 AD2d 356, 358, affd 15 NY2d 882.) As a matter of public policy the merits of an arbitration are beyond judicial review. "The CPLR arbitration provisions (CPLR 7501 *et seq.*) evidence a legislative intent to encourage arbitration. Certainly the avoidance of court litigation to save the time and resources of both the courts and the parties involved make this a worthwhile goal." (*Matter of Weinrott [Carp]*, 32 NY2d 190, 199.) For that reason judicial review is narrowly circumscribed lest the arbitration award "become the commencement instead of the end of litigation" (*Matter of Campe Corp. [Pacific Mills]*, 275 App Div 634, 635, citing *Matter of Shirley Silk Co. v American Silk Mills,* 257 App Div 375, 377).

In the absence of fraud, corruption or other misconduct, an arbitration award may not be impeached because of arbitrator error as to the law or facts. (*Matter of Wilkins,* 169 NY 494; *Matter of Pine St. Realty Co. [Coutroulos]*, 233 App Div 404, mot for lv to app den 258 NY 609; see, also, *Rifkin v Rifkin,* 118 NYS2d 322, affd 281 App Div 1035; *Matter of Flotill Prods. [Buitoni Foods Corp.]*, 14 AD2d 328, 334.) "An arbitrator's paramount responsibility is to reach an equitable result, and the courts will not assume the role of overseers to mold the award to conform to their sense of justice. Thus, an arbitrator's award will not be vacated for errors of law and fact committed by the arbitrator * * * and '[e]ven where the arbitrator states an intention to apply a law, and then misapplies it'" (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629, citing *Matter of Associated Teachers of Huntington v Board of Educ.,* 33 NY2d 229, 235). Nor may a court set aside an arbitration award merely because it believes that the arbitrator's interpretation of a contract "disregards the apparent, or even the plain, meaning of the words." (*Matter of Adelstein v Ortiz Funeral Home Corp.,* 75 AD2d 529, 530, affd 52 NY2d 997.) "Parties who agree to refer contract disputes to arbitration must recognize that ' "[a]rbitrators may do justice" ' and [that] the award may well reflect the spirit rather than the letter of the

agreement" (*Matter of Local Div. 1179, Amalgamated Tr. Union, AFL-CIO [Green Bus Lines]*, 50 NY2d 1007, 1009, citing *Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 582). Moreover, "in the absence of contrary public policy * * * or an express provision in the arbitration agreement otherwise limiting his authority", an arbitrator has the power to fashion appropriate remedies including reformation of a contract. (*Matter of SCM Corp. [Fisher Park Lane Co.]*, 40 NY2d 788, 794.)

New York courts have uniformly held that an arbitrator exceeds his powers only when he ignores specific limitations on the powers delegated to him in the arbitration clause or he gives a completely irrational construction to the provisions of the parties' agreement, thereby effectively rewriting it. (*Lentine v Fundaro*, 29 NY2d 382, 385-386, and cases cited therein; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7511.11 *et seq.*) The sales representative agreement between Maxell and Integrated contained an arbitration clause which conferred broad power on the arbitrator to determine the issues submitted to him. Moreover, since the arbitration was to be held in accordance with the Commercial Rules of the American Arbitration Association, and rule 43 provides that "[t]he Arbitrator may grant any remedy or relief which [he] deems just and equitable and within the scope of the agreement of the parties," the arbitrator had broad equitable power to mold an award which, in his view, was just and proper. (See *United Buying Serv. Int. Corp. v United Buying Serv. of Northeastern N. Y.*, 38 AD2d 75, 79.) Any question as to what is "just and equitable" (rule 43) is for the arbitrator to decide, since "[t]he Arbitrator shall interpret and apply these Rules insofar as they relate to the [his] powers and duties" (rule 53).

Since it is clear that the arbitrator acted within the broad terms of the powers conferred upon him, the only remaining test in determining the issue of excess of arbitral power is whether his award constitutes, at most, a mere error of law, that is, a result different from that which a court would have rendered had the issue been before it (see *Rochester City School Dist. v Rochester Teachers Assn., supra,* at p 582) or complete irrationality

and, in effect, a rewriting of the parties' agreement (*Matter of National Cash Register Co. [Wilson]*, 8 NY2d 377, 383). According to its interpretation Maxell could, without cause or even for corrupt cause, terminate the agreement at any time and that, furthermore, no damages could be assessed against it under any circumstance.

"Arbitrators may do justice * * * [S]hort of 'complete irrationality', 'they may fashion the law to fit the facts before them'" (*Lentine v Fundaro, supra,* at p 386, citing *Matter of Exercycle Corp. [Maratta]*, 9 NY2d 329, 336; see, also, *Matter of Spectrum Fabrics Corp. [Main St. Fashions]*, 285 App Div 710). In *Lentine* (p 386) the court hinted that an arbitrator "might rationally refuse to apply [an equal division of assets] provision unless the original contributions were in fact equal, because otherwise the result would be unjust and violate the spirit of the agreement." Precisely such a situation is presented here. Integrated alleges, and it is not disputed, that evidence of a complicated scheme of kickback, bribery and securities fraud was presented to the arbitrator as the reason for its termination. In such circumstances the arbitrator could find that enforcement of the termination-at-will clause would have resulted in an injustice and violated the spirit of the agreement. When two parties contract with each other good faith and fair dealing are presumed (*O'Neil Supply Co. v Petroleum Heat & Power Co.*, 280 NY 50, 54-55). Bribe solicitation and consequent termination for refusal to pay demonstrates a breach of the implied covenant, and would afford a rational basis for the arbitrator's refusal to enforce the termination-at-will provision.

Moreover, Integrated argued to the arbitrator that Maxell officials had, to its detriment, misled it into believing that only poor performance would justify termination. Thus, it contended, Maxell was equitably estopped from terminating the sales representative agreement without good cause. Additional support for Integrated's reliance on the representations of Maxell's officials can be found in the agreement itself, which provides for termination on the ground, *inter alia,* of unsatisfactory performance with re-

spect to quota.* A provision for termination for cause detracts, of course, from Maxell's argument that the agreement was terminable at will. This point was also urged upon the arbitrator. Each provision of a contract should be read, where possible, to give meaning and effect to the other parts (*Corhill Corp. v S.D. Plants, Inc.,* 9 NY2d 595, 599), and any ambiguity must be construed against the party who drafted the agreement (*Rentways, Inc. v O'Neill Milk & Cream Co.,* 308 NY 342, 348). Thus, the arbitrator had further support for his refusal to enforce the termination-at-will clause.

In *Matter of Granite Worsted Mills (Cowen)* (25 NY2d 451, 457) the Court of Appeals reaffirmed an arbitrator's power to refuse to enforce contractual limitations provided, however, that the award indicates that "he has in fact deliberately and intentionally exercised that power so that judicial review can proceed without the need for speculation as to what has in fact occurred in the arbitral tribunal." There, the underlying agreement limited damages to the total sales price of the goods involved. The arbitrator exceeded the limitation by awarding consequential damages, and it was uncertain whether he made a computational error or refused to enforce the damage limitation clause because of unconscionability, as argued, or on other grounds. The Court of Appeals remitted the matter to the arbitrator for an explanation.

But we need not speculate here. It is clear from the post hearing briefs that the issues of the terminability at will of the agreement and the enforceability of the damage limitation provision were presented to the arbitrator. His refusal to enforce these contractual provisions must be viewed, especially in light of his use of the .term "wrongfully terminated", as a considered determination. His finding that the relationship was wrongfully terminated necessarily carries with it a rejection of Maxell's claim that the

---

* Insofar as is relevant paragraph 18 of the agreement provides:

"This agreement may be terminated as follows * * *

"(c) In the event your performance to quota, conduct in relation to MAXELL business or field support is unsatisfactory to Maxell in any way whatsoever, we may, on thirty (30) days written notice to you, terminate this Agreement or any specific schedule of products."

agreement was terminable at will, since that was the only argument offered as a complete defense to the termination, even if the reasons therefor were shown to have violated public policy. Inasmuch as the award of damages was for wrongful termination, not for unpaid commissions or for any other claim, it is clear that the arbitrator exercised the broad power vested in him and refused to enforce the damage limitation precisely because the termination was wrongful. No further expression, written or otherwise, was needed as a manifestation of his reasoning. Indeed, the parties specifically authorized the arbitrator to dispense with an opinion.

Accordingly, the judgment, Supreme Court, New York County (GREENFIELD, J.), entered November 23, 1982, which, *inter alia,* granted petitioner's motion to confirm an arbitration award and denied respondent's cross motion to vacate said award, should be affirmed with costs and disbursements.

SANDLER, J. P., BLOOM, FEIN and ALEXANDER, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 23, 1982, unanimously affirmed. Respondent shall recover of appellant $75 costs and disbursements of this appeal.