Owen McGivern, J.
This is an application for an allowance of expenses and reasonable counsel and consultants’ fees, for services rendered in this court and other forums, in accordance with a judgment of this court entered on June 21, I960 (cf, 17 Mise 2d 897). The claimants are attorneys for plaintiff and intervenor stockholders of Alleghany Corporation, suing in the derivative right of the corporation, pursuant to a consolidated complaint. The applications seek the sum of $6,105,520.41, and according to counsel, relate to the largest recovery in the history of New York stockholder litigation. The services involved the Alleghany Corporation and pertain to lawsuits which have been in litigation for some 10 years both before the New York State and Federal courts. Even now, whether we are at the journey’s end is not certain, although on April 21,1965, the United States Court of Appeals for the Second Circuit, per Kaufmab, J,, said ; “ this protracted litigation which has occupied so many judges’ time for so long is taking its last gasp of breath ” (Alleghany Corp. v. Kirby, 344 F. 2d 571, 573; see, also, 333 F. 2d 327).
The settlement accomplished by counsel has resulted in an accession to the Alleghany corporate treasury of $3,300,000, *379 together with an exchange of 130,000 shares of nonvoting capital stock of IDS (Investors Diversified Services, Inc.) for 130,000 shares of voting stock, allegedly resulting in control of IDS by Alleghany.
Principal counsel urge that this court should not shy away from the bigness of the requests herein because they are predicated upon a percentage of the recovery and, according to them, the recovery involves control of one of the giant enterprises of the Nation, with total assets of over three billion dollars.
In endeavoring to apply well-recognized principles to an evaluation of the professional services rendered, the recognized norms present no difficulty, such as: the time devoted to the litigation, the skill employed, the novelty and complexity of the issues, the contingent nature of the fees, etc. But when the court is called upon to gauge the benefits achieved by counsel for the corporation and its stockholders, there’s the rub.
Although the concept of ‘£ control ” is as elusive as the Scarlet Pimpernel, the attorneys for the so-called Graubard group submit a magnum opus authored by Sidney M. Bobbins, Ph.D., Professor of Finance, Columbia University, Graduate School of Business, New York, wherein Professor Bobbins places the value of IDS control as between 11 and 19 million dollars. Unfortunately, there is no unanimity of opinion as to this grandiose figure. The present Alleghany attorney contends that it is not in excess of 8 million dollars, but has not submitted expert opinion to substantiate such a conclusion. Mr. Bijur, a claimant-attorney, says it is 5% million dollars; Mr. Graubard, also a claimant-attorney, before the court-appointed Beferee herein thought it worth more than 5 million; and the late Bobert Young, the financial wizard who first steered Alleghany into control of IDS, saw its value in terms of a vast liquidation. None of these views, alas, are calculated to heighten the earnings of Alleghany or increase the dividends of the ever-loving stockholders. Indeed an inevitable impression derived from a judicious perusal of the effort of Professor Bobbins is that “control” brings benefits to the management but only incidentally, if at all, to the corporation and its stockholders. Thus, the court sees nothing of benefit to the stockholders in such statements as: “ Many subtle benefits in contacts, development and new associations flow from the vast interconnections of the IDS activities. These benefits take the form of legitimate business favors that may be expected to come to those responsible for direction of these activities.” (Bobbins, p. 40.)
In effect, we are told by this expert that the advantages of control accrue to the management personnel of Alleghany, not *380 to its stockholders. Further, although Professor Bobbins in his Appendix A refers to his analysis of 89 corporations, all of these were operating companies and nowhere does he furnish us with statistics concerning the value of control of an investment trust, which is what we have before us.
Fortunately, the Appellate Division, First Department, in Ripley v. International Rys. of Cent. America (16 A D 2d 260 [1962]) states that it is not necessary to fix any exact value to the speculative future benefits resulting from a stockholders’ action, and it is sufficient to recognize the existence of some probable future benefit as an additional factor in the assessment of claimants’ compensation. Further, the Ripley opinion countenances a percentage award of an actual recovery, together with reasonable compensation for any ‘ ‘ prospective benefits ’ ’ which accrue to the corporation. Twenty percent of the tangible gain to the corporation has also had appellate approval (cf. Marine Midland Trust Co. v. Forty Wall St. Corp., 13 A D 2d 118 [1961]). This tribunal (Appellate Division, First Department) also opines in Ripley that it is not necessary to assign the same percentage ratio of compensation to the probable future benefits which can be causally attributed to the suit. Yet, it is an evasive task to find a true causal connection to sustain compensation for the resulting benefit to the corporation. Any effort herein to categorize IDS “control” as a cash item becomes an exercise in imaginative literature. The going becomes particularly nebulous when the court tries to discern whether or not the benefits actually accrue to the corporation and its stockholders, or solely and exclusively to the management group currently in control.
■ After giving effect, however, to the above factors and considerations, this court is of the opinion that the following allowances are proper:
Treating the major groups first, the court finds that fair and adequate compensation for the Graubard-Brussels-Phillips group should be $1,250,000, plus disbursements.
The Pomerantz firm has agreed to accept $325,000, plus disbursements, and the court approves this figure. Similar approval is given the $75,000 settlement of David Berdon & Co., the amount sought as accountants for Pomerantz.
The Bijur group performed work of a somewhat duplicative nature and is awarded the sum of $150,000, plus disbursements.
If a disproportion is seen between these latter groups and the Graubard contingent, the court adverts to the avowed willingness of Alleghany to pay the Graubard group $1,000,000. *381 Also, there is the fact that in the Graubard group is Randolph Phillips, one of the activists in the entire litigation, and also the Brussel estate.
The Alleghany Corporation also consents and the court approves the following awards :
Hyman L. Battle, Jr.................................. $5,000
Edgar A. Poe, Jr..................................... $5,000
Matthew W. Goring................................. $1,000
Abraham M. Glickman; Geist, Netter & Marks; Joseph M. Boychuk; Daniel W. Blumenthal for the estate of Edward Endelman; Morris J. Levy; Trynin and Steinman; Sidney L. Garwin; Israel Beckhardt; Norman Annenberg; Nemerov & Shapiro; William Rosenfeld, and Abraham I. Markowitz .........................................$65,000 plus disbursements, for all.
Although this latter group seem to be gentlemen-in-waiting, a settlement of all the claims for $65,000 seems to be in the best interests of the corporation.
The application of Myron Neissloss is not properly attributable to Alleghany and is disallowed.
Thus the total awards appear to be $1,876,000, plus disbursements, but without interest to any applicant.
If all the applicants are not satisfied, the court appreciates the enormous labor of counsel expended over a decade, but unfortunately the precedents permit no award for attorney’s “ pain and suffering ” in litigation of this character.