■ In the Matter of LONG ISLAND UNIVERSITY FACULTY FEDERATION, LOCAL 3998, NYSUT, AFT, AFL-CIO, Appellant, v BOARD OF TRUSTEES OF LONG ISLAND UNIVERSITY, Respondent. — In a proceeding pursuant to CPLR 7510 to confirm an arbitration award, the appeal is from a judgment of the Supreme Court, Kings County (Rader, J.), dated November 20, 1981, which dismissed the petition, granted the cross motion of respondent to vacate the award and denied the petitioner's grievance. Judgment reversed, on the law, with $50 costs and disbursements, petition granted, award confirmed and cross motion to vacate the award denied. The petitioner is the exclusive collective bargaining representative for the teaching faculty at the Brooklyn Center of Long Island University. The current dispute concerns the construction of paragraph seven of an addendum dated November 8, 1980, to the collective bargaining agreement between the parties. The addendum was the culmination of negotiations which ended a six-week strike at the Brooklyn Center and it provided, *inter alia,* for the rescheduling of classes missed during the strike. The academic calendar for the Brooklyn Center was revised and the fall 1980 semester was extended. Paragraph seven of the addendum dealt with compensation to the faculty for the make-up classes, stating: "7. *Make-up Workload as a Result of Union Job Action:* To compensate for loss of services during the job action beginning 10/1/80 full-time [*sic*] shall forfeit 25% of their salary for the period of the job action. Upon satisfactory completion of all faculty services required to satisfy student academic requirements for the fall 1980 semester the balance of 75% salary shall be paid by the University." A dispute arose between the parties over whether the provision applies to all faculty members or just those who participated in the strike (i.e., whether nonstrikers would receive 100% of their salary while strikers would receive 75%). The university

applied paragraph seven only to those members of the faculty who participated in the strike. The petitioner objected and after unsuccessfully proceeding through the grievance procedure set forth in the collective bargaining agreement, it demanded arbitration. The arbitrator found in favor of the petitioner and granted the grievance. In his decision, the arbitrator reviewed the bargaining history of the addendum in general, and paragraph seven in particular. That history showed that during the negotiations the word "striking" was removed from the disputed provision. The arbitrator found: "[T]he language agreed to by the parties clearly supports the Union's contention. The bargained and signed document refers solely to 'full-time.' There is no reference whatsoever to the critical distinction — strikers vs. non-strikers — here suggested by the University. Accordingly, there are no grounds by which one may infer a mutual intent or require a result based on such distinction. The finding, then, is that the University erred in failing to treat all full-time faculty equally in terms of salary reduction." The petitioner initiated this proceeding pursuant to CPLR 7510 to confirm the arbitrator's award. The respondent board of trustees of the university cross-moved to vacate the award. Special Term found in the respondent's favor upon the ground that the arbitrator's award was " 'completely irrational' as it is neither supported by the language of the agreement nor by common sense or justice". The court reasoned: "[T]he disputed portion of the agreement was obviously meant, in part, to penalize those faculty members who went out on strike to the detriment of both the University and its students. Those who did not go out on strike caused no such detriment and it makes no sense to also subject them to any penalty let alone the same penalty. Our American system of justice should not sanction the punishment of people who comply with their responsibilities * * * Since the court finds that no other conclusion by an arbitrator is possible, it would be pointless to remand the matter back to arbitration for further proceedings. The Union's grievance being without merit, the grievance is hereby denied." Special Term erred in vacating the arbitrator's award. The general policy of this State is that arbitration awards are to be enforced by the courts (see CPLR art 75; *Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578). "Courts may not overturn an award because they believe the arbitrator has misconstrued the apparent, or even the obvious, meaning of the contract * * * Here, the arbitrator, resolving the very dispute submitted to him, interpreted the agreement in light of what he found to be the intent of the parties. In doing so, we cannot conclude that he reached a completely irrational result." (*Matter of Local Div. 1179, Amalgamated Tr. Union, AFL-CIO [Green Bus Lines]*, 50 NY2d 1007, 1009.) The policy of enforcing arbitration awards is especially strong in the labor field (see *Steelworkers v American Mfg. Co.*, 363 US 564; *Steelworkers v Warrior & Gulf Co.*, 363 US 574; *Steelworkers v Enterprise Corp.*, 363 US 593). The United States Supreme Court enunciated this policy as follows: "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. As we stated in *United Steelworkers of America v. Warrior & Gulf Navigation Co., ante,* p. 574, decided this day, the arbitrators under these collective agreements are indispensable agencies in a continuous collective bargaining process." (*Steelworkers v Enterprise Corp., supra,* p 596.) In the present case, the decision of Special Term is not in accord with the rationale underlying the foregoing Federal and State policies which encourage arbitration. The court addressed the merits of the case and explicitly replaced its judgment for that of the arbitrator. The disputed provision contains absolutely

no reference to a distinction between those faculty members who took part in the job action and those who did not. It was therefore not "completely irrational" for the arbitrator to conclude that the parties intended to have the provision apply to all full-time faculty. "The mere fact that a different construction could have been accorded the provisions concerned and a different conclusion reached does not mean that the arbitrators so misread those provisions as to empower a court to set aside the award" (*Matter of National Cash Register Co.* [*Wilson*], 8 NY2d 377, 383). We have reviewed the respondent's other contentions and find them to lack merit. Damiani, J. P., Weinstein and O'Connor, JJ., concur.

Thompson, J., dissents and votes to affirm the judgment with the following memorandum: The arbitrator's decision was "'completely irrational'" (see *Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 582). The nonstriking teachers, who reported for work during the strike and also taught all classes necessary to assure that their students satisfied academic requirements, including those classes necessarily missed during the strike, are now to be paid only 75% of their salary for the period of the job action in which they did not participate. This result has been reached despite the fact that the nonstriking teachers were paid during the period of the strike, and the 75% payment provision of the addendum to the collective bargaining agreement by its very terms, was applicable "[t]o compensate for loss of services * * * for the period of the job action" and was thus clearly applicable solely to the strikers. Even the great deference afforded an arbitrator's decision has limits.