OPINION OF THE COURT
Jack J. Cannavo, J.
In this proceeding the plaintiff, State Farm Mutual Automobile Insurance Company, seeks a declaratory judgment to the effect that the defendant, Charles Clacher, is not entitled to receipt of no-fault benefits from the plaintiff subsequent to January 1, 1980, and that its denial of such benefits to the defendant was proper and therefore valid. In his answer, the defendant denies that he is not entitled to the no-fault benefits as alleged by the plaintiff and also asserts that no offsets pursuant to Insurance Law former § 671 (2) are available to the plaintiff.
The issues in this matter were tried on July 26, 1984 and November 8,1984. Additional days for trial were to be requested by the parties and scheduled by the court. However, the parties ultimately decided not to proffer any further proof and rest on the evidence previously adduced at the trial. All posttrial memoranda of law was received by the court on April 12, 1985.
*793 On April 24, 1978, the defendant, plaintiff’s insured, was involved in an accident when he lost control of his motor vehicle while attempting to avoid a collision with another vehicle. When he lost control of his automobile, he struck the center divider on the highway. As a result, his vehicle rolled over several times. He suffered some injuries and was taken from the scene of the accident to the Nassau County Medical Center for emergency medical care. He was treated at the hospital for multiple soft tissue injuries throughout his body, buttock and lower back and was released. Thereafter, he was examined and treated by several other doctors, orthopedists and neurologists because of persistent back problems. At the time of the accident, the defendant was a 52-year-old gasoline truck driver. In addition to driving large gasoline trucks, his work required him to load and unload gasoline products, haul hoses which were 150 feet in length and weighed as much as 200 pounds, and climb up to the top of the trucks he drove, some of which had no power steering and therefore demanded substantial effort to maneuver them.
The defendant made two attempts to return to work during the first week of January 1979. Unfortunately, on the first occasion he experienced substantial pain in his back and had to leave work and go home. On the second occasion, about three days later, the pain he suffered while driving a truck became so severe that he had to be helped out of his truck by police officers and taken to a hospital. Subsequently, the defendant never returned to work. He finally retired from his employment on June 1, 1979, because he was found by his employer to be “permanently and partially disabled.”
The plaintiff, the no-fault carrier, paid lost earnings benefits to the defendant until November 30, 1978. However, the plaintiff thereafter refused to give defendant any further benefits, and, on June 15,1979, the plaintiff issued and sent to defendant its “Denial of Claim Form” with regard to defendant’s entire claim on the ground that his injuries were preexisting and unrelated to the accident.
An arbitration proceeding was then commenced by the defendant before arbitrator, Ira Nydick. In this proceeding the defendant claimed benefits from December 1,1978 through December 31, 1979. Following a full hearing, the arbitrator awarded defendant for this period the total sum of $9,334.40, which was paid by the plaintiff without ever questioning the award. The arbitrator found that the defendant was still disabled and not able to work as a result of the injuries he suffered on April 24, *794 1978. In his arbitration award, the arbitrator included words that “claimant, provided his retirement status does not change, shall be entitled to continuing benefits up to the time limit and payment limit as provided by statute.” The arbitrator also found that on June 1,1979, the claimant was retired by his employer, Exxon Corporation, because he was found by his employer to be permanently and partially disabled.
Nonetheless, the plaintiff refused to make any payments to defendant for lost earnings benefits subsequent to January 1, 1980. Thereon, the plaintiff initiated another arbitration proceeding. The arbitrator in this instance was Jack Glazer, Esq. After a hearing, Mr. Glazer awarded defendant on March 19, 1982, $16,000 as compensation for lost earnings for the period January 1, 1980 to April 24, 1981, less $3,132.80 as a setoff for disability payments which he found defendant received from his employer during this period. An appeal of the award to a master arbitrator was affirmed in its entirety, including the $3,132.80 offset, which defendant had made the subject of a cross claim on the appeal by plaintiff.
Since the award of the arbitrator, which was affirmed by the master arbitrator, was in excess of $5,000, the plaintiff was able to institute the current action to adjudicate the dispute de nova pursuant to Insurance Law § 675 (2).
Only three witnesses testified at the trial of this matter, the defendant, Dr. Craig B. Ordway, an orthopedist for the plaintiff, and Dr. William A. Healy, an orthopedist for the defendant. In addition, several exhibits offered by both the plaintiff and defendant were marked in evidence, which consist of medical reports from the doctor who examined defendant on behalf of the plaintiff, reports from doctors who examined and treated defendant, reports from doctors who examined defendant on behalf of his employer, reports filed with the no-fault carrier by defendant’s attending physician, denial of claim forms which were forwarded by plaintiff to defendant, Ira Nydick’s arbitration award, and a letter from the Exxon Company, defendant’s employer, concerning his entitlement to disability benefits.
The evidence adduced at the trial clearly establishes that prior to April 24,1978, the defendant had never experienced any medical problems with his back or legs and that his medical problems concerning his back surfaced for the first time immediately following the accident. A finding in this regard was also made on January 7, 1980, by the arbitrator, Ira Nydick, and, even though his award was never confirmed pursuant to CPLR 7510, his finding that defendant was disabled and unable to *795 work as a result of the injuries the defendant suffered in the accident is now res judicata on all the issues that were resolved by that arbitration award notwithstanding the lack of confirmation (Hilowitz v Hilowitz, 85 AD2d 621; Matter of Long Is. Univ. Faculty Federation v Board of Trustees, 91 AD2d 686; Slavin v Benson, 493 F Supp 32; Matter of Professional Staff Congress v Board of Higher Educ., 39 NY2d 319; Rembrandt Indus. v Hodges Intl., 38 NY2d 502; Matter of Government Employees Ins. Co. v Kozlowski, 62 AD2d 1056).
Although the plaintiff contends that the compression fracture of the dorsal spine, which was confirmed by X rays following the accident of April 24, 1978, preexisted the accident, this court is compelled to find, because of the overwhelming evidence to the contrary and particularly the medical evidence, that this injury was caused by the accident. As a result of the accident, the defendant sustained a compression fracture of the spine at the level of D4 and that, since the accident, the defendant has been suffering from serious and disabling sequelae which involves radiculitis and radiculopathy, constant tenderness and pain between the shoulder blades and chronic parathoracic muscle spasms. The defendant has been and presently still is disabled to an extent that he can no longer perform the kind of strenuous work he was doing when he was employed as a gasoline truck driver. Even if defendant were suffering from osteopenia, as plaintiff’s doctor contends but not found by any other doctor, such a condition would only have made him more vulnerable to the injuries he suffered as a result of the accident. The denial of benefits to the defendant subsequent to December 31, 1979 was therefore improper and invalid.
At the time of the accident, the defendant was earning $385 per week, which is an amount far in excess of the statutory maximum allowed in the amount of $1,000 per month or 80% of his actual earnings. The period from January 1, 1980 to April 24,1981 represents a period of 16 months. Therefore, defendant is entitled to receive from the plaintiff as additional no-fault payments the sum of $16,000 pursuant to Insurance Law former § 671 (1) (b). Under this law, a person who is covered and who has sustained a loss of earnings in excess of $1,000 per month is entitled to recover as benefits 80% of his actual lost earnings with a maximum recovery of $1,000 per month.
This court finds further that no setoffs are available to the plaintiff against the sum due defendant in first-party benefits. Defendant established to the satisfaction of this court that after January 1,1980, he received no further disability checks of any *796 kind and was receiving only a retirement pension from his company, which of course cannot be deducted from his benefits (Insurance Law former § 671 [2]). The letter in evidence from defendant’s employer does not clearly indicate the disability benefits defendant was entitled to and for the exact length of time nor was there any evidence offered at the trial concerning any possible New York State disability benefits that might have been available to the defendant covering the period from January 1, 1980 to April 24,1981 (Matter of Basch [Kemper Ins. Co.], 85 AD2d 872).
Defendant argues that he is entitled not only to the $1,000 per month from January 1, 1980 to April 24,1981, which this court has found has been improperly withheld from him, but, in addition, he should recover 2% interest per month on the overdue amount and the reasonable cost of attorney’s fees for services rendered by his attorney in collecting the sums due him. Insurance Law former § 675 (1) expressly provides that “[a]ll overdue payments shall bear interest at the rate of two percent per month. If a valid claim or portion thereof was overdue and such claim was not paid before an attorney was retained with respect to the overdue claim, the claimant shall also be entitled to recover his attorney’s reasonable fee.” The statute therefore clearly allows the assessment of interest and counsel fees if the payment of overdue first-party benefits has been ordered (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451; Wanken v Allstate Ins. Co., 108 Misc 2d 947). The issue of when the no-fault payments became due has been raised by the parties. The insurance regulations mandate the manner in which the insurance carrier is permitted to deny a claim for first-party benefits (Insurance regulation 65.15 [¶] [11 NYCRR]) and when interest upon amounts of overdue benefits starts to run (Insurance regulation 65.15 [g] [3] [11 NYCRR]).
The latter section of the New York State Insurance Department regulation provides that interest on any first-party benefits due does not begin to run until the matter is placed into arbitration following a denial of the claim. Since a denial was issued by the plaintiff on June 15,1979, and the matter was not arbitrated until July 31, 1980, the plaintiff contends that interest, if due, cannot start running until July 31,1980. However, in the instant case, the court does not agree with the plaintiff.
The only “denial of claim form” that was sent by plaintiff to defendant was the one sent to defendant on June 15,1979. This resulted in defendant’s submitting the dispute to arbitration and the ultimate Nydick arbitration award. No other “denial of *797 claim form” was sent to defendant following the Nydick award in January 1980, even though the arbitrator found that the defendant was still disabled and unable to work because of the injuries he had suffered. The plaintiff ceased paying benefits to defendant without having issued a proper denial of claim pursuant to the aforementioned insurance regulations. Therefore, this court cannot permit the plaintiff to rely technically on Insurance regulation 65.15 (g) (3) after it disregarded and failed to comply with other pertinent insurance regulations. The court therefore concludes that in accordance with the statutory mandates of the Insurance Law former § 671 (1), the defendant is entitled to interest at the rate of 2% per month on the overdue sums commencing on February 1, 1980, which is 30 days after the date when the first payment became due (Matter of Berkowitz v Government Employees Ins. Co., 72 AD2d 794).
In fixing attorney’s fees pursuant to Insurance Law former § 675 (1), the court should not consider the value of the underlying claim (Matter of Country-Wide Ins. Co. [Barrios], 43 NY2d 685; 11 NYCRR 65.6 [g] [1]) but must take into account the value of the services rendered by the attorney. The court should consider the status and skill of the attorney, the difficulty and complexity of the matter, the novelty of the legal issues involved, the time spent by the attorney and the services necessarily performed in connection with securing resolution of the matter (Koerner v Associated Linen Laundry Suppliers, 270 App Div 986; Matter of Giddings, 96 Misc 2d 824; Zenn v Anzalone, 46 Misc 2d 378; Judiciary Law § 474; 7 NY Jur 2d, Attorneys at Law, § 160; Attorneys Fees in Absence of Provision, Ann., 57 ALR3d 475). After considering all of the above criteria, the court finds that the reasonable value of the professional services performed by defendant’s attorney in this matter amount to the sum of $4,500.