Chief Judge Breitel.
 

 Petitioner Rokowsky, owner of a parcel of real property in the Borough of The Bronx in the City of New York, seeks reduction of his tax assessment. He
 
 *575
 
 alleges both overvaluation and inequality of assessment. Respondents, the Finance Administrator and the Tax Commission of the City of New York, appeal from an Appellate Division order affirming Supreme Court’s denial of their motion to dismiss the inequality cause of action.
 
 *
 

 There are two issues. The first and more significant is whether a claim of inequality of assessment can be established by comparison solely on the basis of the State equalization rate for a particular borough within the City of New York, or whether the city rate must be used. The second, subsidiary, issue need be reached only if the city rate, rather than the borough rate, must be used. That issue is whether a petition which alleges inequality with respect to all real property in the City of New York may be sustained even though in the original application for correction, made to the City Tax Commission, inequality was alleged only with respect to other property in the same borough and section of the city as the subject property.
 

 The order of the Appellate Division should be affirmed. Since the city, not the borough, is the taxing authority, and since taxes are collected at a uniform rate throughout the city, only the city equalization rate, not the borough rate, may be used to prove a claim of inequality. In this case, the petition explicitly alleges unequal assessment in comparison with all other property in the city. Since the earlier application for correction put the Tax Commission on notice of petitioner’s complaint, the petition should be sustained. No formalistic incantation is necessary to notify the commission of the basis for an inequality claim.
 

 Initially, petitioner applied to the Tax Commission of the City of New York for correction of the assessed valuation of his real estate for the fiscal year 1970-1971. In this application, it was alleged that the assessed valuation was set at a higher rate than the assessed valuation of all other real property in the Borough of The Bronx, and was out of proportion to the assessed valuation of property of similar character in the immediate vicinity. No reference, however, was made to inequality in comparison with real property in the city as a whole.
 

 After the application was denied, a petition was filed in
 
 *576
 
 Supreme Court, Bronx County, seeking the same tax reduction. In the petition, inequality was asserted with respect to property in the city as a whole, and, especially, property in the Borough of The Bronx.
 

 The difficulties in this case arise primarily because of the difference between the equalization rate for the city as a whole and the rate for each particular borough. The State Board of Equalization and Assessment sets equalization rates for various localities throughout the State. These rates indicate the percentage of full value at which property within the locality is assessed. Within the City of New York, equalization rates are set for the city as a whole and for each of the city’s five component boroughs. Crucial to this case, however, is that all property in the city is taxed at the same percentage of assessed valuation, regardless of any difference in equalization rates between boroughs. Only special assessment rates for local improvements vary from borough to borough, and these rates are very small in comparison with the city-wide tax rates.
 

 The applicable statute is section 166-1.0 of the Administrative Code of the City of New York, which permits judicial review of tax assessments on the ground "[t]hat the assessment is erroneous by reason of inequality” (subd b, par 3). To the same effect is section 706 of the Real Property Tax Law, which deals with review of tax assessments in the State generally. These provisions must be construed in light of their purpose, a purpose made evident in the statutory language and long recognized by this court: No taxpayer may be saddled with a discriminatory assessment which imposes on him more than his fair share of the total tax burden
 
 (Matter of Wolf v Assessors of Town of Hanover,
 
 308 NY 416, 421;
 
 People ex rel. Warren v Carter,
 
 109 NY 576, 581-582).
 

 Inequality of assessment within any one borough does not establish that any individual taxpayer is paying more than his share of the city’s real estate taxes. The tax rate is uniform throughout the city. Thus, if all property in a single borough is underassessed by comparison with all property in the city as a whole, it is of reduced significance that an individual parcel in that borough is assessed at a higher percentage of full value than other property in the borough. The owner of the parcel may nevertheless be paying less than his fair share of the city’s taxes, and may not be heard to complain. It is the city that sets the tax rate, it is the city that collects the taxes,
 
 *577
 
 and it is the city that must serve as the yardstick for any claim of inequality.
 

 Perhaps, if the city’s equalization rate were not available, comparison with the equalization rate of an individual borough might provide significant support for a claim of inequality. Since the city equalization rate, however, is available, it should control, insofar as equalization rates may now be used to establish "true” value (see Real Property Tax Law, § 720, subd 3;
 
 Guth Realty v Gingold,
 
 34 NY2d 440, 449).
 

 This analysis is in harmony with the language of the statute. A claim of inequality may be premised on an assessment "made at a higher proportionate valuation than the assessment of * * * other real property on the assessment rolls of the city” (Administrative Code of City of New York, § 166-1.0, subd b, par 3). Petitioner interprets this language to mean that a comparison may be made with property on any borough assessment roll, of which there are five, one for each borough. A more reasonable interpretation, however, would permit comparison only with property on the assessment rolls in the aggregate. Use of "rolls” in the plural and explicit reference to "the city” are consistent with this reading. Moreover, and this is key, petitioner must establish that he "is or will be injured” by the unequal assessment (§ 166-1.0, subd b, par 3). Unless a property owner is paying more than his fair share of the city’s real estate taxes, no injury results. This is the substance to which the statutory language is addressed.
 

 In this proceeding, petitioner’s initial failure, in his application before the Tax Commission, to allege that his assessment was unequal with respect to other property in the city as a whole, should not preclude him from alleging such inequality in his petition, and proving it at trial. An allegation of inequality, even if the wrong comparison area be used, should be enough to inform the Tax Commission of the basis for dissatisfaction with an assessment. Especially since the equalization rate for The Bronx was close to that for the city as a whole, the Tax Commission cannot contend successfully that it was misled by petitioner’s allegations. Moreover, once a contention of inequality is made, the Tax Commission should be charged with knowledge of the proper comparison area. Therefore, since the petition itself asserts inequality with respect to the city as well as the Borough of The Bronx, it states a cause of action, and hence should not be dismissed.
 

 The problem in this case is significant only because of the
 
 *578
 
 deplorable disparity of equalization rates among the several boroughs. If the property owners of each borough had been receiving equal treatment from the taxing authorities at the time of this assessment, the borough equalization rates would be the same, and application of the borough rate would produce the same result as application of the city rate. The contrary approach, however, would further benefit property owners in boroughs that have already benefited from the inequities in the assessment process—at the expense of the taxpayers in the rest of the city.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
 

 Order affirmed, with costs. Question certified answered in the affirmative.
 

 *
 

 The motion in fact was a cross motion to petitioner’s motion seeking a set date for trial.