Jasen, J. (dissenting).
I dissent and vote to affirm the order of the Appellate Division.
The sole issue on this appeal centers on the proper interpretation to be given section 219 of the Judiciary Law. In my view, the fact that petitioners were awarded relief pursuant to a grievance procedure, involving arbitration, is not dispositive here. The issue is solely one of law and is so intimately related with matters of public concern as to be nonarbitrable. The Judiciary Law section at the heart of this case establishes the rate of compensation to be paid to nonjudicial personnel in the unified court system. Generally, arbitrators may decide issues of law and their decisions, absent abuse of power or irrationality, will be sustained by the courts. (See Rochester City School Dist. v Rochester Teachers’ Assn., 41 NY2d 578.) However, an incorrect interpretation of controlling statute in this instance would do injustice, not only to the parties, but to all of the people of the State. More particularly, we should not permit an erroneous arbitration decision to stand where taxpayers of the State would ultimately have to bear the burden of salaries in excess of those provided by law. "Thus the issue which the arbitrators will be called upon to decide transcends the private interest of the parties. It is not simply that arbitrators can impose unnecessarily restrictive or lenient standards. The evil is that, if the enforcement of [salaries of court personnel] is left in the hands of arbitrators, erroneous decisions will have adverse consequences for the public in *1000 general, and the guardians of the public interest, the courts, will have no say in the results reached.” (Matter of Aimeee Wholesale Corp. [Tomar Prods.] 21 NY2d 621, 627.)
In reaching the merits of this case, I conclude that the interpretation given the statute by the Administrative Board of the Judicial Conference has a rational basis and should be sustained. We are concerned here with the application of a statute by those charged with administering its provisions. "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.” (Matter of Howard v Wyman, 28 NY2d 434, 438; Matter of Mounting & Finishing Co. v McGoldrick, 294 NY 104, 108; see, also, Rochester Tel. Corp. v United States, 307 US 125, 146.)
In 1972, the Legislature adopted a uniform plan for the compensation of nonjudicial court personnel. All positions in the competitive, noncompetitive and labor classes in the unified court system had to be allocated to salary grades in conformity with the plan. The Legislature provided that all State-paid nonjudicial employees were to receive a salary increase of 4%. (L 1972, ch 283, § 59.) However, the Legislature also evinced an intention that new section 219 of the Judiciary Law, which provided for grading of positions in the future, should not have the effect of increasing present salaries beyond the 4% increase previously provided. (L 1972, ch 283, § 61.) Subdivision 6 of section 219 makes provision for reclassifying persons transferred into lower grade positions. "6. Appointments, transfers, reinstatements, demotions and displacements to lower grade positions. If an employee is demoted or displaced to a position in a lower grade, or is appointed, transferred or reinstated to a position in a lower grade, he shall, upon such demotion, appointment, displacement, transfer, or reinstatement, receive the rate of compensation which corresponds with the total number of his years of service in the positions from which and to which he is demoted, displaced, appointed, transferred or reinstated, as the case may be, and, for the purpose of computing future increments, he shall be credited with the number of years of service in such position which corresponds with such rate of compensation. If an employee is demoted to a position in a lower grade, he shall, upon such demotion, be paid the salary in such lower grade which corresponds with the number of his years of service in the grade from which he was demoted, or, *1001 in the discretion of the administrative board of the judicial conference, he may be paid a higher rate of compensation, not exceeding the maximum of the grade to which such position is allocated, and not exceeding the rate of compensation received prior to such demotion, and, for the purpose of computing future increments, he shall be credited with the number of years of service in such position which corresponds with such rate of compensation.”
Turning to the particular facts of this case, petitioners were employed, prior to 1972, as counselors in the State Conciliation Bureau. When the new salary plan went into effect, petitioners were placed in salary Grade 22. This grade represented their current salaries as increased by 4%. In June, 1973, the bureau was discontinued. Petitioners accepted appointments to the title of Mental Health Information Officer, a position allocated to Grade 19. Petitioner Pagano was placed in the third increment level of the grade as that was his increment level in his prior grade. Petitioner Philage was, for the same reason, placed in the second increment level of Grade 19. Petitioners now contend that their increment levels should have been higher based upon their service in the Conciliation Bureau prior to the 1972 change in plan.
In my view, the Administrative Board, and later the Appellate Division, properly rejected this contention. By its very terms, subdivision 6 of section 219 is applicable only to transfers from a higher grade to a lower grade. When such transfer occurs, the employee is entitled to "the rate of compensation which corresponds with the total number of his years of service in the positions from which and to which” he is transferred. Given the legislative history of the statute, it was reasonable for the board to construe the term "position” as meaning "position in grade”. The purpose of the 1972 statutes was to develop a uniform salary plan for the compensation of nonjudicial personnel in accordance with the grade of their position. Petitioners were slotted into grade with the benefit of a sizable salary increase. Since the statute was to have prospective effect, the board could, as it did, determine that prior ungraded service in the years before the amendment was not to be given additional credit. On its face, the statute is applicable only in instances of transfer from grade to grade.
This is not to say that petitioners have been denied all credit for their prior years of nongraded service. Such credit was previously granted in the 4% increase granted in 1972 *1002 and reflected in the allotment of positions to grades. Essentially, petitioners seek, and the majority grants them, a windfall for having been demoted. Persons who were originally slotted in Grade 19 in 1972 received only the 4% increase as the sole credit for their prior years of service in their positions. However, petitioners, by virtue of their demotion, will be credited twice for their prior nongraded service. It is manifestly unjust to interpret a statute so as to reward employees for being transferred to a lesser position while persons already in the lesser position are denied similar credit. The interpretation of the board avoids this sort of unjust enrichment and is in line with the legislative intent to start a new salary system afresh in 1972. I would sustain the board’s determination .
Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in memorandum; Judge Jasen dissents and votes to affirm in a separate opinion; Chief Judge Breitel taking no part.
Order reversed, etc.