OPINION OF THE COURT
Fuchsberg, J.
In a proceeding brought pursuant to CPLR 7511, the Appellate Division reversed an order of Special Term vacating an arbitration award which, inter alia, had ordered a school district to reinstate a former teacher. The essential question is whether the arbitrator exceeded his power.
The arbitral proceeding was the last stage in the grievance machinery provided by a collective bargaining agreement between petitioner Norwood-Norfolk Central School District and respondent Norwood-Norfolk Central Teachers Association to cover the 1975-1976 school year. The controversy arose out of the district’s decision not to re-employ respondent *150 Harriet Liota, who had then worked for it as an art teacher for some five years.
At the time her principal notified Ms. Liota of this decision, he also gave her a copy of her year-end evaluation, which included critical comments about classroom control and the like. Believing that these formed the basis for her termination, she then filed a grievance in which she complained that the school had neglected to comply with subdivision B of article IV of the union agreement. That clause, entitled "teacher evaluation”, reads: "It is recognized that a system of periodic evaluation is essential to assist teachers in developing competency and realizing their potential. It is further recognized that information gathered through such a system will enable decisions by the Board of Education concerning reappointment, tenure, promotion, etc., to be made in a just and equitable manner. Consequently it is agreed that the policy on evaluation jointly developed by the administration and Teaching staff will be followed for the life of the contract subject to modification jointly agreed upon” (emphasis ours). Further particularizing her grievance, she went on to assert, and in due course the arbitrator was to find, that, despite its commitment to assist teachers in developing competency, the district had not only been derelict in failing to confer with her as to. the results of its 1975-1976 observation of her classroom performance, but that in the two previous years it had not even bothered to make observations at all.
The school’s answer was directed solely to meeting the charge articulated by the teacher. The submission to the arbitrator, as pertinent here, was simply whether "the District violated Article IV, B as to observations and evaluations”. Only during the arbitration hearings, which followed the three prearbitration stages, did the district take the tack that the determination not to re-engage Ms. Liota, then a provisionally certified teacher, had been impelled by her failure to obtain permanent certification within five years of her initial employment (see State Education Dept, Memorandum Div TEC 75-76 [5] [May, 1976]).
As found by the arbitrator, however, the district had been notoriously lax in its enforcement of that requirement until December, 1975, when its board of education newly announced a policy whereunder "continued employment of teachers who have allowed their provisional certifications to lapse” was to be conditioned on successful completion of six graduate credits *151 during the 1975-1976 year and at least six more in each subsequent year until the certification deficit was cured. However, Ms. Liota, to the knowledge of the school authorities and at their inspiration, had embarked on a more than responsive after-school program of nine credit hours towards a master’s degree for 1975-1976 and apparently was pursuing it diligently at the time of her separation.*
At the completion of the proceeding before him, the arbitrator concluded that the purpose of subdivision B of article IV was to "enable decisions by the Board of Education concerning reappointment * * * to be made in a just and equitable manner” and that the board’s "arbitrary and discriminatory” application of the new certification policy offended that requirement. "[I]n the light of this finding of violation of the contract”, he then directed that Ms. Liota be re-employed, reimbursed for net loss of earnings (less credit for any outside earnings) and thereafter not be terminated for lack of certification so long as she continued to comply with the board program, the last on the presumption that the State Commissioner of Education would continue to forgive the delay of certification upon good faith application by the district.
 It was against this backdrop that Special Term, echoing the district’s contentions that the arbitrator’s consideration of the failure to observe the teacher in the two prior years constituted an unauthorized delving into the "irrelevant” and that his "incorporation” of the board’s own certification policy into the agreement was impermissible, concluded that the arbitrator had rewritten rather than interpreted the agreement. It thereupon entered an order vacating the award and, concordantly, rejected respondents’ motion to confirm. For its part, the Appellate Division reversed in a memorandum which emphasized that the award was not irrational. We now affirm. Our reasons follow.
Mapping our course, we once again stress the limited and well-defined nature of the issues presentable to a court on review of a consensual arbitration. Unless law or strong public policy prohibits its submission, a party that wishes to challenge the arbitrability of any issue must do so before the process gets underway (CPLR 7503, subd [b]; Binghamton Civ. Serv. Forum v City of Binghamton, 44 NY2d 23, 28; Matter of *152 National Cash Register Co. [Wilson], 8 NY2d 377, 383). And, once it does, its conduct is not governed by the substantive or evidentiary rules which commonly prevail in courts of law; rather, the constraints on the arbitral authority are those measured by the bounds of rationality. Further, to achieve what the arbitration tribunal believes to be a just result, it may shape its remedies with a flexibility at least as unrestrained as that employed by a chancellor in equity (North Syracuse Cent. School Dist. v North Syracuse Educ. Assn., 45 NY2d 195, 200; Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 582; Matter of Professional Staff Congress/City Univ. of N. Y. v Board of Higher Educ., 39 NY2d 319, 323). In countenancing such departures from conventional common-law standards, courts do no more than respect the right of disputants to solve their differences by pursuing what they may perceive to be speedier, less expensive and more practical dispositional paths (see, generally, Matter of Siegel [Lewis], 40 NY2d 687, 689).
These principles in mind, it seems clear that the fact that 1973-1974 and 1974-1975 defaults in classroom evaluation preceded the year of the contract under which the arbitration arose did not preclude the arbitrator from taking them into account. In this connection, we first note the breadth of the clause from which the arbitrator derived his authority; it covers "an alleged violation of the provisions of this contract”. More particularly, as previously indicated, the submission to which the parties agreed did not directly or indirectly confine the arbitrator’s inquiry to 1975-1976.
In any event, we need not regard the proof of teacher evaluation in prior years as other than evidentiary in character. As such, the relevancy and weight it was to be accorded rested well within the arbitrator’s unfettered discretion. Most important, it easily met almost any conceivable test of rationality. Certainly, it was not for the courts to say that the arbitrator was not at liberty to treat the departure from evaluation requirements in the year of the contract as evidence of a pattern of disinterest casting doubt on the accuracy of the district’s 1975-1976 rating of Ms. Liota. Likewise, it was within the province of the arbitrator alone to judge whether it tended to counter any contention that Ms. Liota was exaggerating the significance of the failure to hold any conferences aimed at developing her competency and her teaching potential. In brief, in accepting this proof, the arbitrator could have *153 been motivated by the clearly rational view that a party’s intent or expectations may be gauged by its similarly circumstanced past conduct.
We turn then to the district’s contention that the arbitrator improperly based his decision on matters dehors the contract, to wit, the board’s independently promulgated certification policy. The short answer is that it was for the arbitrator’s interpretation of the agreement that the parties bargained. In that light, it was for him, and him alone, to decide whether, under subdivision B of article IV, the contract’s provisions for teacher evaluation were the only criteria for determining whether the decision as to Ms. Liota’s reappointment was "made in a just and equitable manner”. In effect, he apparently chose to construe this clause as requiring performance to be the controlling consideration in reappointment determinations. On this basis, it was perfectly permissible for the arbitrator to examine the certification policy — a factor introduced into the proceeding by the district itself as a defense— in order for him to be able to judge whether its arbitrary and discriminatory enforcement was inconsistent with a goal-oriented requirement for "just and equitable” treatment. In pursuing such a train of thought, the arbitrator was also bolstered by the license his appointment gave him to interpret the agreement in accordance with its spirit rather than merely its letter and to divine both (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, supra). Needless to say, that a court of law might reach a different result, both in its interpretation of subdivision B of article IV and its evaluation of the certification policy, is beside the point (see Lentine v Fundaro, 29 NY2d 382).
Finally, a word about that part of the award which directs Ms. Liota’s re-employment and places a limitation on her future discharge, each despite her present lack of permanent certification. The district takes the position that these are violative of law. But the arbitrator did not order her re-engagement and retention unconditionally. He relied on the continued generosity of the commissioner’s regulations in allowing uncertified teachers to be legally employed (see 8 NYCRR 80.32) and on the policy adopted by the district in contemplation of the continued existence of the commissioner’s policy. It is within the broad remedial powers of an arbitrator, acting with flexibility, to fashion a remedy which will forestall even an unconscious inclination to circumvent *154 an aggrieved party’s rights, no matter how well motivated or how sincerely rationalized that conduct may be. We cannot say that the arbitrator went outside his storehouse of permissible remedies here.
We therefore conclude that the order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur.
Order affirmed, with costs.

 Though her notice of termination arrived before her grades were due, as the arbitrator’s opinion indicates, Ms. Liota satisfactorily completed all the courses she was pursuing.