In the Matter of the BOARD OF EDUCATION OF THE DOVER UNION FREE SCHOOL DISTRICT, Respondent, v DOVER-WINGDALE TEACHERS' ASSOCIATION, Appellant.

Second Department, October 11, 1983

### APPEARANCES OF COUNSEL

*Bernard F. Ashe* (*Kevin H. Harren* and *Rocco A. Solimando* of counsel), for appellant.

*Shaw & Shebitz* (*David S. Shaw* of counsel), for respondent.

### OPINION OF THE COURT

WEINSTEIN, J.

The question presented for resolution on this appeal is whether an arbitrator is empowered to resolve a dispute involving a contractual provision calling for negotiation where the parties to the contract have failed to reach an agreement on their own. More specifically, at issue is whether the arbitrator exceeded the scope of his authority in setting forth a formula providing for the receipt of additional pay by teachers faced with oversized classes in violation of the class-size provisions of the contract after several unsuccessful attempts by the parties to resolve class size by way of negotiation. In our view, an arbitrator may, absent any express limitation, retain jurisdiction to resolve a dispute concerning a contractual provision which

calls for negotiation, after the parties have been afforded an opportunity to reach an agreement. Accordingly, the judgment of Special Term must be reversed and the arbitrator's award reinstated.

The petitioner and appellant union were parties to a collective bargaining agreement covering the period of July 1, 1980 through June 30, 1983. Section 5:3 of article V of the agreement limits the size of the kindergarten classes to 25 pupils and provides as follows: "Should any class exceed the mandatory limit, as of October 1 and February 1 the [union] shall have the right to reopen negotiations to bargain the impact of such overload." Article IV of the agreement provides for the resolution of disputes arising thereunder by recourse to a multistage grievance procedure culminating in the submission of unresolved grievances to final and binding arbitration. A grievance is defined as "a claim by an employee or group of employees, or the [union], that there has been or is a violation or deprivation of a term and/or condition of employment under this contract." By way of limiting the arbitrator's power, it was specifically stated in section 4:3 that the arbitrator was without power or authority to make any decision requiring the commission of any act prohibited by law or violative of the terms of the agreement. Nor did he have the power to alter, add to or detract from the provisions of the agreement.

During the 1980-1981 school year, a dispute arose between the parties concerning the teaching load of kindergarten teachers in the Dover Union Free School District. The issue was whether the mandatory class load limits set forth in section 5:3 of the agreement were exceeded when kindergarten teachers were assigned more than 25 students in either the morning or afternoon sessions of their classes." A grievance was filed by the union alleging that the board had violated section 5:3 of the agreement. When the matter could not be resolved at any of the prearbitral

---

* The facts regarding class size are not in dispute. Ruta Ronis and Maryanne Herzog are kindergarten teachers at the Wingdale Elementary School. The district has two separate half-day sessions for kindergarten pupils. Ms. Ronis was assigned 28 pupils in the morning session and 22 in the afternoon session. As of February 9, 1981, the number of pupils in the morning session was reduced to 27. Ms. Herzog was assigned 26 children in the morning session and 24 in the afternoon.

stages of the grievance procedure, it was submitted to an arbitrator for resolution pursuant to the terms of the contract.

The parties stipulated to the submission of the following issues to be resolved by the arbitrator:

"Did the Board violate Article V, Section 3 of the Agreement when:

"(A) the class size in the Kindergarten was allowed to exceed the mandatory limit; and

"(B) the Board failed to reduce the class size to the mandatory maximum; and

"(C) the Board failed to negotiate the impact of such class size increases?

"If so, the Arbitrator shall be impowered [sic] to award a remedy consistent with the provisions of the collectively negotiated agreement."

The union argued that in accordance with the unequivocal language of the agreement, the size of a kindergarten class is limited to 25 children, that the averaging of pupil load was permitted by the terms of the agreement solely with respect to grades 7 through 12, and that inasmuch as the board had clearly violated the agreement and failed to negotiate the impact of said violation, the affected teachers should receive an additional 1/25 in salary for each day of the breach.

While the board agreed that the class-load maximums set forth in the agreement are mandatory, it denied that any overload had occurred. Since kindergarten teachers, unlike other elementary school teachers, have more than one class assignment daily, the board deemed it appropriate to average those class loads in order to meet the mandatory limits for class size as set forth in the contract. Moreover, the discrepancies in class load between the morning and afternoon sessions was partially attributable to problems of pupil transportation.

After hearing the arguments of both sides and considering the facts, the arbitrator determined that the limit of 25 pupils applied separately to each kindergarten session and that the board's refusal to negotiate regarding the impact of the class-size overload violated the collective bargaining

agreement. With respect to the union's demand for an award of money damages, the arbitrator noted that the parties to the agreement had clearly intended that any remedy for an increase in class load above the contractual limits be negotiated by them. Accordingly, the board was directed to immediately commence negotiations with the union and bargain the impact of the overload. The arbitrator reserved jurisdiction over the issue for a period of 30 days from April 8, 1981, the date of the award, during which time either party was afforded the right to appeal for a determination and award in the event that the parties failed to reach an agreement.

In compliance with the arbitrator's directive, the parties engaged in negotiations. However, they failed to reach an agreement, and the union, within the appropriate time period, requested that the arbitrator finally determine the issue.

A hearing was conducted, as a result of which the arbitrator rendered the following supplemental award: "In the event that any single pupil is registered in classes within a grade (one class or a series of classes) in excess of the maximum class size for that grade, for more than 20 school days consecutively and no agreement is negotiated between the parties as to the impact of such overload, then the District shall pay the affected teacher or teachers a sum equivalent to $1/25$ of $1/200$ of the median teacher's salary for each day each such pupil is registered in the grade."

The board commenced this proceeding to vacate the original award and/or the supplemental award on the ground that the arbitrator lacked the power to make a final determination as to the extra compensation due the teachers of oversized classes (see CPLR 7511, subd [b], par 1, cl [iii]). The board contended that the arbitrator's power was limited to directing that the parties negotiate on the subject of class-size overload. The union cross-applied for confirmance of the award. Special Term found that the arbitrator had violated section 4:3 (c) of the collective bargaining agreement, which provides that an arbitrator lacks the power to alter, add to or detract from the agreement, and that he had exceeded the power granted to him pursuant to the stipulated submission of issues. The arbitrator's sup-

plemental award was accordingly vacated, resulting in the union taking the instant appeal.

"As a matter of public policy, the merits of an arbitration are beyond judicial review" (*Integrated Sales v Maxell Corp. of Amer.*, 94 AD2d 221, 224). Judicial review of arbitration awards is, accordingly, circumscribed, lest the arbitrator's determination "become the commencement instead of the end of litigation" (*Matter of Campe Corp.* [*Pacific Mills*], 275 App Div 634, 635).

It is well settled that when an "arbitrator has been authorized to resolve disputes regarding the interpretation of the contract * * * his determination will only be set aside * * * if it is 'completely irrational' * * * 'or where the document expressly limits or is construed to limit the powers of the arbitrators, hence, narrowing the scope of arbitration'" (*Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 582). "Basically, an arbitrator's award will be vacated when it has the effect of rewriting the agreement" (*Matter of Manhattan & Bronx Surface Tr. Operating Auth. v Local 100, Transport Workers Union of Amer.*, 84 AD2d 749, 750).

There is no claim in the instant case that the award was "completely irrational" or that it constituted a rewriting of the agreement, nor do we deem it to be so. Rather, the vacatur by Special Term was predicated upon its determination that the contract expressly limited the authority of the arbitrator to order the parties to negotiate the impact of class-size overload. We disagree.

While it is true that the collective bargaining agreement conferred upon the union the right to negotiate the impact of classes whose size exceeded the contractually designated limit, it is evident that negotiations may prove uneventful and that the breach may go without remedy. To avoid such a patently unjust result, we hold that, absent an express agreement to that effect, the right to negotiate cannot constitute the sole remedy available to the grievant.

Arbitrators may do justice and are not bound, absent provision to the contrary in the arbitration agreement, by principles of substantive law or rules of evidence (*Lentine v Fundaro*, 29 NY2d 382, 385-386; *Matter of City of Troy* [*Troy Police Benevolent & Protective Assn.*], 81 AD2d 730).

Where the parties have agreed to refer contract disputes to arbitration, particularly where the arbitration involves public collective bargaining agreements, the arbitrators may do justice and the award may well reflect the spirit rather than the letter of the agreement (*Matter of Local Div. 1179, Amalgamated Tr. Union [Green Bus Lines]*, 50 NY2d 1007, 1009, mot for rearg den 51 NY2d 770; *Matter of Manhattan & Bronx Surface Tr. Operating Auth. v Local 100, Transport Workers Union of Amer.*, 84 AD2d 749, 750, *supra*). Stated otherwise, "arbitration is analogous to a proceeding in equity and the arbitrator, like the Chancellor, is not strictly limited to remedies requested by the parties but is empowered to 'reach a just result regardless of the technicalities'" (*Board of Educ. v Bellmore-Merrick United Secondary Teachers*, 39 NY2d 167, 172, mot to resettle den 39 NY2d 1032, citing *Matter of Associated Teachers v Board of Educ.*, 33 NY2d 229, 235). A court may not usurp the arbitrator's function by imposing its concept of a just and equitable result (*Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629; *Matter of Local 345 of Retail Store Employees Union [Heinrich Motors]*, 81 AD2d 1021, 1022).

In general, except where prohibited by the plain and express terms of the submission, an arbitrator is empowered to grant *any* relief reasonably fitting and necessary to a final determination of the matter submitted to him, including legal and equitable relief (*Matter of North Colonie Cent. School Dist. [North Colonie Teachers' Assn.]*, 46 NY2d 965, affg 60 AD2d 496, 498; *Pavilion Cent. School Dist. v Pavilion Faculty Assn.*, 51 AD2d 119, 123, mot for lv to app dsmd 40 NY2d 845). "It is within the broad remedial powers of an arbitrator, acting with flexibility, to fashion a remedy which will forestall even an unconscious inclination to circumvent an aggrieved party's rights, no matter how well motivated or how sincerely rationalized that conduct may be" (*Matter of Board of Educ. [Hess]*, 49 NY2d 145, 153-154).

A virtually identical issue was presented in *Matter of Board of Educ. (Association of Mineola School Administrators)* (NYLJ, Oct. 7, 1980, p 11, col 6). In that case, as in the case at bar, the subject contract provided that the arbitrator's award "may not alter, amend or modify any of the

terms of this Agreement". With respect to determining the compensation owing to a member of the association who performed greater duties than his job description, the contract in the *Mineola* case further provided that the amount of compensation "shall be agreed upon" by the union and the board. As in the instant case, the arbitrator therein, upon making his award, retained jurisdiction to insure that the award was implemented. When the parties were unable to resolve the issue, the arbitrator exercised his residual jurisdiction and set the matter down for another hearing. The board thereupon moved to permanently stay the hearing. In the course of denying the board's application, Justice SPATT concluded that the arbitrator's determination was not irrational and stated, in pertinent part (p 12, col 1): "Nor has the arbitrator made a new contract for the parties, employed a 'perverse' misconstruction of the governing terms, or rendered an award violative of public policy. He did not make a new contract; he interpreted the provisions of this contract."

At bar, the parties had agreed that the arbitrator could fashion a remedy which was consistent with the collective bargaining agreement. This is precisely what he did in affording the parties an opportunity to negotiate the impact of the breach. The arbitrator further interpreted the provision regarding oversized classes to enable him to retain jurisdiction and resolve the dispute should the parties fail to reach an accord. The monetary award rendered was " 'reasonably fitting and necessary to a final determination of the matter submitted' " (*Matter of North Colonie Cent. School Dist. [North Colonie Teachers' Assn.]*, 60 AD2d 496, 498, *supra; Pavilion Cent. School Dist. v Pavilion Faculty Assn., supra*). In so acting, the arbitrator did not alter, add to or detract from the provisions of the collective bargaining agreement (see article XV of the parties' agreement, entitled "Salary Considerations"). Rather, the arbitrator reached a rational result in an obvious attempt to do justice and did not thereby exceed his jurisdiction.

In view of the absence of an express limitation upon the arbitrator to afford a remedy to the grievant for the contract violation, such construction was proper and unassail-

able (see *Matter of Windsor Cent. School Dist. [Windsor Teachers Assn.]*, 52 NY2d 734; *Matter of Board of Educ. [Association of Mineola School Administrators]*, *supra*).

Insofar as the award addresses future controversies, it is not violative of the contract since it incorporates the right of the parties to negotiate an agreement as to oversized classes.

For the reasons stated, the judgment appealed from should be reversed and the arbitrator's award reinstated and confirmed.

MOLLEN, P. J., TITONE and RUBIN, JJ., concur.

Judgment of the Supreme Court, Dutchess County, entered February 4, 1982, reversed, on the law, with costs, application denied, cross application granted, and award reinstated and confirmed.