In the Matter of the Arbitration between NEW YORK STATE THRUWAY AUTHORITY, Respondent, and LOCAL 72, NEW YORK STATE THRUWAY EMPLOYEES, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Appellant.

Third Department, March 6, 1986

## APPEARANCES OF COUNSEL

*Beins, Axelrod & Osborne, P. C. (Jonathan G. Axelrod* of counsel), and *Dominick Tocci* for appellant.

*Robert J. Farrell (Charles T. Randall* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Respondent, Local 72, New York State Thruway Employees, International Brotherhood of Teamsters (the Union), brought a grievance under its collective bargaining agreement with petitioner, New York State Thruway Authority (the Authority), concerning the Authority's directive for the 1982-1983 winter season for the staffing of the maintenance crew on weekends and holidays in the Amsterdam section of the Thruway. The dispute ultimately was referred to binding arbitration. The provision of the collective bargaining agreement in controversy was paragraph I of article XVI, which states in relevant part that "[w]hen the Winter Maintenance Patrol (Weekends and Holidays) is fully staffed, such staffing * * * shall be at least three employees in all Sections except in the New York Division".

The background facts of the dispute were uncontested. Maintenance operations on the Thruway are organized geographically on the basis of four divisions, New York, Albany, Syracuse and Buffalo, each of which is further broken down into sections of 15 to 20 miles each. Except for the winter maintenance period, maintenance employees in all sections work only a Monday through Friday shift from 7:30 A.M. to 4:00 P.M., and there are no maintenance operations on weekends or holidays. Upon the approach of winter, however, when regular road and bridge repair work shuts down, the Authority institutes a winter maintenance schedule in three stages, mainly designed to correspond to the increasing and decreasing intensity of winter weather conditions. In the first phase, the Authority partially staffs three eight-hour shifts during weekdays by transferring some of its personnel from the 7:30

A.M. to 4:00 P.M. shift. In the second phase, generally corresponding to mid-winter, each weekday shift goes into what is referred to as a "full staffing" pattern of three or more maintenance employees in each section. In the final phase, as the winter ebbs, the Authority returns to a partial staffing of all three weekday shifts. Also during the winter maintenance period, the Authority staffs weekends and holidays on a partial or full basis on all three shifts. Such staffing is referred to as the "weekend maintenance patrol". "Full staffing" during weekdays does not entail the payment of overtime by the Authority to its maintenance employees, since that is accomplished merely by transferring personnel from their regular daytime shift. All weekend and holiday staffing, however, is overtime work and paid accordingly.

In its grievance, the Union complained of the scheduling of only partially staffed maintenance patrols on weekends and holidays in the Amsterdam section. It contended that paragraph I of article XVI of the collective bargaining agreement and the parties' past practice both require "full staffing" on weekends and holidays during the same period that "full staffing" for all three shifts is implemented on weekdays. The Authority countered that the "management prerogatives" provision of the collective bargaining agreement (art VI) expressly reserves the Authority's discretion over assignment of personnel and the determination of employee schedules. The Authority also submitted, in support of its position, a prior arbitration award between the parties in which the arbitrator had rejected the Union's contention that, based upon past practice, "full staffing" for the winter maintenance patrol was to commence upon and remain in effect throughout the entire winter maintenance period. The arbitrator in the prior proceeding ruled that no such binding past practice existed to modify or restrict management's discretion under article VI of the collective bargaining agreement.

After conducting an evidentiary hearing, the arbitrator in the instant arbitration proceeding rendered an award which, as required by the parties' submission, interpreted and applied the provision of the agreement in dispute to the Amsterdam section only. The arbitrator ruled that the Authority violated paragraph I of article XVI of the agreement in failing to fully staff the weekend and holiday winter maintenance patrol during the same period that it fully staffed three shifts for weekdays. The arbitrator found that the purpose of the clause in question was to provide some guarantee of overtime for

maintenance employees who were subject to call to respond to winter storms occurring on weekends and holidays and that, prior to the staffing directive under review, there had been a long-standing practice with respect to the Amsterdam section which equated "full staffing" on weekdays with "full staffing" on weekends and holidays. The arbitrator found a "logical connection" between "full staffing" on weekends and holidays and "full staffing" on weekdays, since both are impelled by the need to ameliorate the driving hazards of winter storms which may occur at any date or time of day. Moreover, the arbitrator reasoned that unless staffing patterns for the winter maintenance patrol were keyed to the Authority's decision to provide full, three-shift staffing on weekdays, any right to "full staffing" under paragraph I of article XVI of the agreement would be at the whim of the Authority.

The Authority then made the instant application to vacate the award. Special Term agreed with the Authority's position that there was no evidence of any binding past practice and that neither paragraph I of article XVI of the agreement nor any other related provision restricts the Authority's contractual prerogatives in scheduling winter maintenance staffing on weekends and holidays independently of such scheduling for weekdays. Accordingly, Special Term held that the arbitrator had exceeded his authority by, in effect, inserting a new management obligation into the agreement and, on that basis, vacated the award.

In our view, the award was not subject to vacatur. There was evidence in the record supporting the arbitrator's finding that the contested clause in the agreement was inserted at the behest of the Union in order to provide some guaranteed overtime for crews manning the winter maintenance patrol on weekends and holidays. The arbitrator was not unreasonable in concluding that (1) paragraph I of article XVI of the collective bargaining agreement was ambiguous and failed to define what a "fully staffed" winter maintenance patrol meant, other than to provide that when it occurred, all sections except in the New York division would utilize at least three employees, and (2) that without some objectively identifiable reference point as to when "full staffing" occurred in any given year, there was no meaningful obligation on the part of the Authority ever to assign crews of at least three employees to the winter maintenance patrol. The arbitrator's interpretation of the parties' understanding, i.e., that full winter maintenance staffing was the same for purposes of weekends and

holidays as it was for weekday shifts, was buttressed by the fact that, in the Authority's "Winter Maintenance Manual" (dated Apr. 1977 and revised in Oct. 1981), the Authority set forth provisions for maintenance staffing for the three above-described phases of the winter maintenance period and that assignments in the mid-winter phase both for weekdays and for weekends and holidays in accordance with paragraph I of article XVI of the agreement are subsumed within a single heading entitled "Fully-Staffed Period".

On the basis of the foregoing, it cannot be said that the arbitrator's construction of the agreement equating "full staffing" for weekends and holidays during the winter period with "full staffing" on weekdays lacks rationality (see, Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 583) or that the arbitrator violated common law or contractual limitations on his authority by rewriting the parties' agreement (see, Matter of Albany County Sheriff's Local 775 [County of Albany], 63 NY2d 654, 656; cf. Kings Park Classroom Teachers Assn. v Kings Park Cent. School Dist., 100 AD2d 929, 930, appeal dismissed 63 NY2d 742). This remains true although the arbitrator with equal rationality could have arrived at the opposite conclusion due to the lack of explicitness in the contract on the issue, divergent practices on winter maintenance in other sections of the Thruway and the prior arbitration award. Consequently, the judgment vacating the award must be reversed, and judgment granted confirming the award.

MAHONEY, P. J., KANE, MAIN and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, with costs, application denied and arbitration award confirmed.