# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**810**

**CA 11-02565**

PRESENT: CENTRA, J.P., PERADOTTO, CARNI, LINDLEY, AND SCONIERS, JJ.

---

IN THE MATTER OF THE ARBITRATION BETWEEN
PHILADELPHIA INSURANCE COMPANY,
PETITIONER-RESPONDENT,

AND                                                    MEMORANDUM AND ORDER

UTICA NATIONAL INSURANCE GROUP, DOING BUSINESS
AS UTICA MUTUAL INS. CO., RESPONDENT-APPELLANT.

---

BROWN & KELLY, LLP, BUFFALO (JOSEPH M. SCHNITTER OF COUNSEL), FOR
RESPONDENT-APPELLANT.

DAMON MOREY LLP, BUFFALO (MICHAEL J. WILLETT OF COUNSEL), FOR
PETITIONER-RESPONDENT.

-----------------------------------------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Erie County (Patrick
H. NeMoyer, J.), entered March 7, 2011 in a proceeding pursuant to
CPLR article 75.  The order, among other things, granted the petition
to vacate an arbitration award.

It is hereby ORDERED that the order so appealed from is reversed
on the law without costs, the petition is denied, the cross motion is
granted and the arbitration award is confirmed.

Memorandum:  Petitioner commenced this proceeding pursuant to
CPLR 7511 (b) seeking vacatur of the arbitration award on the ground
that arbitration was not available because under Insurance Law § 5105
(a) neither of the vehicles involved in the collision was "used
principally for the transportation of persons or property for hire."
We conclude that Supreme Court erred in granting the petition to
vacate the arbitration award and in denying the cross motion to
confirm the award.  Inasmuch as petitioner failed to apply for a stay
of arbitration before arbitration, petitioner waived its contention
that respondent's claim for reimbursement of first-party benefits is
not arbitrable under Insurance Law § 5105 (*see Matter of Liberty Mut.
Ins. Co. [Allstate Ins. Co.]*, 234 AD2d 901).  In view of that waiver,
petitioner may not thereafter seek to vacate the arbitration award on
the ground that the arbitration panel exceeded its power (*see id.;
Matter of Utica Mut. Ins. Co. v Incorporated Vil. of Floral Park*, 262
AD2d 565, 566; *see also Rochester City School Dist. v Rochester
Teachers Assn.*, 41 NY2d 578, 583).

Were we to reach the issue whether respondent's vehicle was used
principally for the transportation of persons or property for hire

under Insurance Law § 5105, we would agree with our dissenting colleagues that the appropriate standard of review is whether the award was arbitrary and capricious (*see Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223).  However, despite acknowledging that we must apply a deferential standard of review, the dissent proceeds to conduct, with laser-like precision, a comprehensive legal analysis of the statutory phrase "vehicle used principally for the transportation of persons or property for hire" (§ 5105).  In reaching a legal conclusion as to the appropriate definition to be assigned to the subject phrase, the dissent relies upon eight different definitions of or references to the phrase "vehicle for hire," which the dissent concedes arise in "other [statutory or legal] contexts."  Notably, none of those definitions or references relied upon by the dissent was raised during arbitration or on appeal.

As the court recognized, petitioner has "contended from the outset that there is no legal or factual basis here for loss transfer pursuant to [Insurance Law §] 5105," and we disagree with the dissent's conclusion that "at no point during the course of the proceedings in this matter did petitioner take the position that the claim was not arbitrable."  Indeed, in addition to labeling its defense as one for "lack of jurisdiction," petitioner twice asserted in the arbitration that it was "not subject to the loss transfer procedure."  Thus, we have no difficulty concluding that petitioner took the position that the claim was not arbitrable.  In concluding that the phrase assigned to petitioner's defense ("lack of jurisdiction") is not dispositive, our dissenting colleagues fail to offer any explanation of what was otherwise meant thereby.  Moreover, the dissent's reliance on *Matter of Progressive Cas. Ins. Co. v New York State Ins. Fund* (47 AD3d 633) is misplaced because, unlike here, the petitioner in *Progressive* "at no point during the course of the proceedings . . . [took] the position that *the arbitration panel lacked jurisdiction* or that the . . . claim was not arbitrable" (*id.* at 634 [emphasis added]).  Thus, that case does not support the dissent's position that petitioner, despite labeling its defense as one for "lack of jurisdiction," did not assert that the claim was not arbitrable.

Both the dissent and the court disregard controlling precedent of this Court in determining that petitioner's contention was not waived (*see Liberty Mut. Ins. Co.*, 234 AD2d 901).  The doctrine of stare decisis "recognizes that legal questions, once resolved, should not be reexamined every time they are presented" (*Dufel v Green*, 198 AD2d 640, 640, *affd* 84 NY2d 795).  " 'The doctrine . . . rests upon the principle that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes' " (*People v Taylor*, 9 NY3d 129, 148, quoting *People v Bing*, 76 NY2d 331, 338, *rearg denied* 76 NY2d 890).  Stare decisis " 'is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process' " (*id.*; *see People v Damiano*, 87 NY2d 477, 488-489 [Simons,

J., concurring]; *Baden v Staples*, 45 NY2d 889, 892).

Here, this Court has previously held that, by failing to apply for a stay before arbitration, an insurer waives the contention that the claim is not arbitrable under Insurance Law § 5105 (*Liberty Mut. Ins. Co.*, 234 AD2d 901). In the instant matter, the court acknowledged our decision in *Liberty Mut. Ins. Co.*, but concluded that it was overruled by *Motor Veh. Acc. Indem. Corp*. (89 NY2d 214). That was error. Indeed, the Court of Appeals in *Motor Veh. Acc. Indem. Corp*. did not hold that insurers are precluded from obtaining judicial review of the threshold question of whether a claim was subject to loss-transfer arbitration under section 5105. Rather, the courts of this State have long recognized that a court has the power to resolve the threshold question whether a loss-transfer arbitration should be stayed under CPLR article 75 (*see Matter of State Farm Mut. Auto Ins. Co. v Aetna Cas. & Sur. Co.*132 AD2d 930, 931, *affd* 71 NY2d 1013; *City of Syracuse v Utica Mut. Ins. Co.*, 90 AD2d 979, *affd* 61 NY2d 691; *Utica Mut. Ins. Co.*, 262 AD2d 565; *Liberty Mut. Ins. Co.*, 234 AD2d 901).

*Motor Veh. Acc. Indem. Corp*. (89 NY2d 214), also relied upon by the dissent as a basis for concluding that the award is arbitrary and capricious, involved an "erroneous application of the Statute of Limitations" by the arbitrator (*id*. at 224). In concluding that such an error of law was *not* arbitrary and capricious as a matter of law, the Court in *Motor Veh. Acc. Indem. Corp*. noted the varying interpretations of the limitations rule by the courts. Here, there is a paucity of decisions interpreting the phrase "for hire" in the Insurance Law § 5105 context, and our own decision on this point noted that the statute is "inartfully drafted" and does not limit the universe of vehicles embraced thereby to "taxis and buses, and livery vehicles" (*State Farm Mut. Auto. Ins. Co.*, 132 AD2d at 931). Therefore, even assuming, arguendo, that we could reach the issue, we would conclude that, under the circumstances presented, it cannot be said that the arbitration panel's award was arbitrary and capricious or was unsupported by any reasonable hypothesis (*see Motor Veh. Acc. Indem. Corp*., 89 NY2d at 224).

All concur except PERADOTTO and SCONIERS, JJ., who dissent and vote to affirm in the following Memorandum: We respectfully dissent. Unlike the majority, we conclude that petitioner did not waive its contention that the vehicle owned by its insured and involved in the subject accident was not "used principally for the transportation of persons or property for hire" within the meaning of Insurance Law § 5105 (a). We further conclude that there is no evidentiary support or rational basis for the arbitration panel's determination that the at-issue vehicle—a minivan owned by a nonprofit community residence for developmentally disabled individuals and used by its employees to transport the six residents of the group home—is a vehicle "for hire" under that section.

Petitioner's insured, Rivershore, Inc. (Rivershore), is a private, nonprofit organization that provides residential and

community support services to individuals with developmental disabilities.  Rivershore operates several state-funded community residences for people with disabilities, including a residence on 17th Street in Niagara Falls.  On May 11, 2009, Rivershore employee Thomas Beckhorn, a night program manager at the 17th Street residence, was on his way to pick up one of the residents from her mother's home when he was involved in a motor vehicle accident with a vehicle owned by Mary D. Farmel and operated by Cheryl K. French.  French sustained injuries in the accident.  At the time of the accident, Beckhorn was operating a minivan owned by Rivershore and insured by petitioner.  The Farmel vehicle was insured by respondent.  After paying first-party personal injury protection (first-party) benefits to and on behalf of French, respondent filed an application for inter-company arbitration, seeking reimbursement of those benefits from petitioner pursuant to the loss-transfer provisions of Insurance Law § 5105.  In a "Contentions Sheet" submitted to the arbitration panel, petitioner contended that it was "not subject to the loss[-]transfer procedure because not one of the vehicles in the accident weighed more than 6,500 lbs. and/or neither vehicle was used principally for transportation of persons or property for hire."  In an amended contentions sheet, petitioner specifically contended that the minivan operated by Beckhorn weighed between 5,001 and 6,000 pounds, and that it was not used for the transportation of persons or property for hire.  Rather, petitioner asserted that the minivan "was used in the course of providing general services to a disabled person, services that are regularly provided by Rivershore[ ] . . . to its developmentally disabled residents."

        The arbitration panel determined that the Rivershore minivan "meet[s] the definition of a livery for this loss" and awarded respondent the full amount of the first-party benefits respondent had paid to French.  Petitioner then commenced this proceeding seeking to vacate the arbitration award pursuant to CPLR 7511 (b) on the ground that the award was without evidentiary support or rational basis and thus was arbitrary and capricious insofar as the arbitration panel determined that the minivan was a vehicle for hire within the meaning of Insurance Law § 5105.  Respondent cross-moved to confirm the award.  Supreme Court granted the petition, denied the cross motion, and vacated the arbitration award on the ground that the arbitrators "acted irrationally and without an evidentiary basis" in concluding that the minivan was "used principally for the transportation of persons or property for hire" (§ 5105).  We would affirm.

        As relevant here, Insurance Law § 5105 (a) provides that "[a]ny insurer liable for the payment of first[-]party benefits . . . which another insurer would otherwise be obligated to pay . . . but for the provisions of th[e No Fault Statute]" has a "*right to recover* [those benefits] . . . only if at least one of the motor vehicles involved . . . [weighs] more than [6,500] pounds unloaded or is . . . *used principally for the transportation of persons or property for hire*" (emphasis added).  Thus, the right to recovery under that statute's loss-transfer provision is limited to accidents in which one of the involved vehicles (1) exceeds 6,500 pounds, or (2) transports persons or property "for hire."  The Legislature amended section 5105 (a) in 1977 to add those alternative conditions with the intention of

"limit[ing] the right of insurance carriers to recover first-party payments" (*Matter of State Farm Mut. Auto. Ins. Co. v Aetna Cas. & Sur. Co.*, 132 AD2d 930, 931, *affd* 71 NY2d 1013; *see Matter of Progressive Northeastern Ins. Co. [New York State Ins. Fund]*, 56 AD3d 1111, 1112, *lv denied* 12 NY3d 713). Pursuant to section 5105 (b), "mandatory arbitration is the sole remedy regarding disputes between insurers over responsibility for payment of first-party benefits" (*State Farm Mut. Auto Ins. Co. v Nationwide Mut. Ins. Co.*, 150 AD2d 976, 977; *see also* NY St Ins Dept 2005 Circular Letter No. 10, *RE: PIP [No-Fault] Inter-company Loss Transfer Procedures* ["If there is a dispute with respect to a claim arising pursuant to [s]ection 5105, the sole remedy of any insurer or compensation provider is via the submission of the controversy to a mandatory arbitration program"]).

Contrary to the contention of respondent and the conclusion of the majority, we conclude that at no point during the course of the proceedings in this matter did petitioner assert that the claim was not arbitrable, i.e., that the arbitrators lacked the authority to adjudicate the claim (*see Matter of Progressive Cas. Ins. Co. v New York State Ins. Fund*, 47 AD3d 633, 634; *cf. Matter of Liberty Mut. Ins. Co. [Allstate Ins. Co.]*, 234 AD2d 901). During arbitration, petitioner did not object to proceeding in the arbitral forum or contend that the claim was not subject to arbitration, and does not so contend on appeal. Rather, petitioner asserted on the merits that respondent could not recover pursuant to the loss-transfer provisions of Insurance Law § 5105 because neither vehicle involved in the accident weighed more than 6,500 pounds or was used principally for the transportation of persons or property for hire. Thus, petitioner's "participation in the arbitration proceeding without first moving for a stay of arbitration did not constitute a waiver of its contention that the [minivan] was not [a vehicle for hire] within the meaning of . . . [section] 5105" (*Progressive Cas. Ins. Co.*, 47 AD3d at 634). The fact that petitioner's contentions sheet labeled its defense as one for "lack of jurisdiction" is not dispositive of the issue whether petitioner asserted that the claim was not arbitrable. The substance of petitioner's contention, i.e., that the minivan did not qualify as a vehicle for hire, "is a condition precedent to ultimate recovery [under section 5105], *not a condition precedent to 'access to the arbitral forum' *" (*id.*, quoting *Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 7 [emphasis added]; *see Progressive Northeastern Ins. Co.*, 56 AD3d at 1112). In light of the broad scope of the mandatory arbitration provision in Insurance Law § 5105 (b), we conclude that petitioner properly submitted the issue whether the minivan was a "vehicle . . . for hire" to the arbitration panel for determination (§ 5105 [a]; *see Progressive Cas. Ins. Co.*, 47 AD3d at 634) and, arguably, had no choice but to do so (*see* § 5105 [b]; *Paxton Natl. Ins. Co. v Merchants Mut. Ins. Co.*, 74 AD2d 715, 716, *affd* 53 NY2d 646 ["Arbitration provides the sole remedy in loss transfer between insurers and the arbitration panel is the proper forum . . . for the determination of all questions of law and fact which may arise in connection with the remedy that respondent seeks"]).

With respect to the merits, "[w]here, as here, the parties are obligated by statutory mandate to submit their dispute to arbitration (*see* Insurance Law § 5105 [b]), the arbitrator's determination is subject to 'closer judicial scrutiny' than with voluntary arbitration" (*Progressive Northeastern Ins. Co.*, 56 AD3d at 1113, quoting *Matter of Motor Veh. Acc. Indemn. Corp. v Aetna Cas. & Sur. Co.*, 89 NY2d 214, 223; *see Matter of Furstenberg [Aetna Cas. & Sur. Co.-Allstate Ins. Co.]*, 49 NY2d 757, 758). "To be upheld, an award in a compulsory arbitration proceeding must have evidentiary support and cannot be arbitrary and capricious" (*Motor Veh. Acc. Indemn. Corp.*, 89 NY2d at 223). Further, "article 75 review questions whether the decision was rational or had a plausible basis" (*Matter of Petrofsky [Allstate Ins. Co.]*, 54 NY2d 207, 211; *see Progressive Cas. Ins. Co.*, 47 AD3d at 634).

It was respondent's burden, as the party seeking reimbursement, to establish its right to recovery under Insurance Law § 5105 (a) (*see Progressive Northeastern Ins. Co.*, 56 AD3d at 1112; *see also Matter of Hanover Ins. Co. v State Farm Mut. Auto. Ins. Co.*, 226 AD2d 533, 534). Here, we conclude not only that respondent failed to meet its burden, but we also conclude that there is no evidentiary support or rational basis for the arbitrators' determination that the minivan was principally used to transport persons "for hire," a condition precedent to respondent's entitlement to reimbursement under section 5105 (a) (*see Progressive Northeastern Ins. Co.*, 56 AD3d at 1113). As this Court held in *State Farm Mut. Auto Ins. Co.* (132 AD2d at 931), "the words 'for hire' modify the word 'vehicle' and . . . the statute covers only those vehicles hired to transport people, *such as taxis and buses*, *and livery vehicles hired to transport property*" (emphasis added). We agree with the court that, under the circumstances of this case, "the Rivershore minivan cannot be categorized as or even likened to a taxi or bus."

The term "vehicle for hire" is commonly understood and defined in other contexts as a vehicle held out to the public for the provision of transportation services in exchange for a fee (*see generally* Penal Law § 60.07 [2] [b] [defining " 'for-hire vehicle' " as "a vehicle designed to carry not more than five passengers for compensation and such vehicle is a taxicab, . . . a livery, . . . or a 'black car' "]; Vehicle and Traffic Law § 121-e [defining "livery" as "(e)very motor vehicle, other than a taxicab or a bus, used in the business of transporting passengers for compensation"]; Vehicle and Traffic Law § 401 [5-a] [a] [ii] [defining "motor vehicle operated for hire" as "mean(ing) and includ(ing) a taxicab, livery, coach, limousine or tow truck"]; Ops Gen Counsel NY Ins Dept No. 1-12-2001 [Jan. 2001] ["The phrase 'a motor vehicle used principally for the transportation of persons or property for hire' refers to vehicles hired to transport people and livery vehicles hired to transport property"]). Such vehicles are typically operated by drivers who are required to have a particular certification or license, and are subject to specialized licensing, insurance, safety, and other requirements (*see e.g.* Vehicle and Traffic Law § 148-a [defining a "taxicab" as "[e]very motor vehicle, other than a bus, used in the business of transporting passengers for compensation, and operated in such business under a

license or permit issued by a local authority"]; Vehicle and Traffic Law § 370 [1] [requiring filing of indemnity bond or insurance policy by every person or entity "engaged in the business of carrying or transporting passengers for hire in any motor vehicle"]; Vehicle and Traffic Law § 375 [23] ["Every motor vehicle operated for hire upon the public highways of this state shall be equipped with handles or other devices which shall permit the door or doors to the passenger compartment to be readily opened from the interior of the vehicle"]; *see generally* Vehicle and Traffic Law § 498 [governing interjurisdictional pre-arranged for-hire vehicle operations]).

The evidence before the arbitration panel in this case consisted of the deposition testimony of Beckhorn, the driver of the minivan, and material from Rivershore's Web site. Such evidence establishes that Rivershore is not in the business of transporting members of the public for compensation, and that the Rivershore minivan was not used for that purpose. Rivershore's Web site states that it supports 12 state-funded community residences for individuals with developmental disabilities, and "serves many more people in their private homes throughout Niagara County." In addition to its residential services, Rivershore "provides life planning services, clinical services, and support with employment and volunteer pursuits." Beckhorn testified that he worked at the 17th Street community residence as a nighttime program manager, and that, at the time of the accident, he was driving to pick up one of the residents from her mother's house. Beckhorn testified that he was not specifically hired to pick up the resident; rather, transporting residents of the group home was only one of his many duties as a program manager. Beckhorn did not charge a fare, and he was not paid per trip. Further, the record establishes that Beckhorn possessed a "regular" driver's license and that the minivan bore passenger plates rather than livery or commercial license plates.

In determining that the minivan constituted a vehicle for hire under Insurance Law § 5105 (a), the arbitrators relied upon Beckhorn's testimony that he "was going to pick up one of Rivershore's customers," as well as materials from Rivershore's Web site, which, according to the arbitrators, "proves that [Rivershore] offers a series of services for their customers . . . [including] transportation to appointments." Beckhorn's testimony, however, establishes that he was on his way to pick up not simply a "customer[]" of Rivershore; rather, he was picking up a resident of the 17th Street community residence in a minivan used by Rivershore staff for group home purposes. With respect to Rivershore's Web site, none of the materials submitted to the arbitration panel refer to Rivershore's provision of transportation services, let alone the transportation of customers "for hire." The portion of the Web site relied upon by the arbitrators applies to Rivershore's individualized service environment program, which is "designed for people *who live in their own apartment or house, or in a family dwelling*" (emphasis added), not for individuals who live in a community residence. In any event, even if that program was involved here, the Web site does not state that Rivershore provides transportation services to program participants. Rather, it states that "[h]ighly trained staff will visit [participants'] home[s] and provide supports to help [them]

achieve [their] goals, which are specific and individualized to [each participant]. These supports include assisting [participants] in completing all necessary daily activities, *assisting [them] with attending any needed medical appointments*, and gaining further independence, productivity and inclusion in [their] community" (emphasis added).

In sum, the record establishes that the Rivershore minivan was not held out to the community as a vehicle transporting people "for hire." To the contrary, the minivan was assigned to the 17th Street community residence for the exclusive purpose of assisting the six individuals who live there with activities of daily living, i.e., shopping, attending events, family visits, etc. The driver of the minivan was not hired for the purpose of providing transportation and did not possess a specialized license to provide transportation services; rather, he was hired to provide residential services to the residents of the group home that, from time to time, included driving them to various activities. We therefore conclude that the arbitration panel's determination that the at-issue minivan was "used principally for the transportation of persons . . . for hire" lacks evidentiary support or a rational basis, and thus that the court properly vacated the arbitration award on that ground (Insurance Law § 5105 [a]; *see generally Progressive Northeastern Ins. Co.*, 56 AD3d at 1113-1114; *Progressive Cas. Ins. Co.*, 47 AD3d at 634).

Entered:  July 6, 2012                          Frances E. Cafarell
                                                Clerk of the Court